STATE *vs.* LOUIS DISALVO.

1.  HOMICIDE—"MANSLAUGHTER" DEFINED; "MURDER."

"Manslaughter," termed homicide because it is the killing of a human being, is the unlawful killing of another without malice, express or implied, and is unlike "murder," which contains malice.

2. HOMICIDE—"VOLUNTARY MANSLAUGHTER" DEFINED.

"Voluntary manslaughter" is where one kills another in the heat of blood which usually occurs in fighting or under great provocation.

3. HOMICIDE—"INVOLUNTARY MANSLAUGHTER" DEFINED.

"Involuntary manslaughter" is where a person in committing an unlawful act not felonious or tending to great bodily harm, or in committing a lawful act without proper caution or requisite skill, unguardedly or undesignedly kills another.

4. HOMICIDE—"HOMICIDE BY MISADVENTURE" DEFINED.

"Homicide by misadventure" is the accidental killing of another where the slayer is doing a lawful act unaccompanied by any criminally careless or reckless conduct.

5. HOMICIDE—ONE STRIKING ANOTHER DRIVING AN AUTOMOBILE AT UN-LAWFUL SPEED, CAUSING DEATH THEREBY OR BY "GROSS NEGLIGENCE," GUILTY OF MANSLAUGHTER.

One who, while driving an automobile at a speed in excess of that allowed by 28 *Del. Laws, p.* 43, kills another by striking him with his car, is *prima facie* guilty of negligence, and of manslaughter if the unlawful speed was the cause of the death; and, even if the driver did not exceed the legal speed, he would be guilty of manslaughter if the death was caused by "gross negligence" on his part; that is, by a wanton, careless, and reckless disregard of the rights and safety of others.

6. HIGHWAYS—PEDESTRIAN AND AUTOMOBILE OR OTHER VEHICLE BOUND TO EXERCISE "REASONABLE CARE" TO PREVENT ACCIDENTS.

A traveler on foot has the same right to the use of a public highway as an automobile or other vehicle; but in using a public street or highway pedestrians and drivers of automobiles alike are bound to the exercise of "reasonable care" to prevent accidents, that is such care as is reasonable and proper under the circumstances, and are required to use their senses to avoid danger so far as can be in the exercise of due care.

7. HOMICIDE—NEGLIGENCE OF PERSON STRUCK BY AUTOMOBILE DRIVEN AT UNLAWFUL SPEED DOES NOT RELIEVE DRIVER FROM CRIMINAL LIABILITY.

Where a person by driving an automobile in a willful, careless, reckless, and negligent manner, or at an unlawful rate of speed as defined by 28 *Del. Laws, p.* 43, has caused the death of another, the negligence of the deceased does not under ordinary circumstances relieve the driver from criminal liability but the conduct of the deceased is material to the extent that it bears upon the negligence or wrongful conduct of the accused.

8. HOMICIDE—FAILURE OF PEDESTRIAN TO CORRECTLY JUDGE ABILITY TO CROSS STREET DOES NOT EXONERATE DRIVER OF AUTOMOBILE FROM CRIMINAL LIABILITY IN STRIKING HIM.

Although a pedestrian in crossing a street has a duty to exercise due care to see if an automobile is approaching, he has a right to assume that an approaching automobile will not be driven at an unlawful rate of speed, or in a grossly negligent manner; and if the unlawful speed or gross negligence of the driver is the direct cause of the accident, the failure of the pedestrian to correctly judge his ability to safely cross the street will not exonerate the driver from criminal liability in striking him.

9.   HOMICIDE—DRIVER OF AUTOMOBILE KILLING PEDESTRIAN ENTITLED TO
     ACQUITTAL IF DEATH CAUSED BY MISADVENTURE.
     In a prosecution of an automobile driver for manslaughter for killing a
pedestrian, if the accused used reasonable care in operating his automobile
under the circumstances, and the death of the pedestrian was caused by mis-
adventure, and not because of the unlawful act or gross negligence of the ac-
cused, he would be entitled to acquittal.

10.  CRIMINAL LAW—WEIGHT AND EFFECT OF POSITIVE AND NEGATIVE
     EVIDENCE.
     Testimony of witnesses without qualification that they heard a signal of
warning given is usually of much more weight than that of those who merely
say they did not hear it.

11.  INDICTMENT AND INFORMATION—JURY MAY FIND ONE PROSECUTED FOR
     MANSLAUGHTER GUILTY OF ASSAULT.
     In a prosecution of an automobile driver for manslaughter for killing a
pedestrian, if the jury is not satisfied of his guilt of manslaughter, they may
find him guilty of an assault.

*(March 20, 1923.)*

PENNEWILL, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*Aaron Finger* and *Clarence A. Southerland*, Deputy Attorneys-
General, for the State.

*Leonard E. Wales* and *James Saulsbury* for defendant.

Court of Oyer and Terminer for New Castle County, March
Term, 1923.

Indictment for manslaughter, No. 56, March Term, 1923.

The first count in the indictment charges that the defendant,
while operating an automobile in Wilmington Hundred in this
county, on the eighteenth day of February of the present year,
negligently failed to keep a proper look-out for persons on the
highway, and by reason thereof struck Martha E. Vandyke, and
thereby feloniously and wilfully made an assault on the said
Martha E. Vandyke and wilfully and feloniously killed her. The
second count is similar to the first. The third count differs from
the first that in the negligence charged was the failure of the de-
fendant to give reasonable warning of his approach so as to avoid
injury to the said Martha E. Vandyke by the automobile which
he was operating against the laws of this state. The fourth count

charges that the defendant was engaged in the commission of a misdemeanor against the laws of the state in operating an automobile at a rate of speed exceeding one mile in four minutes, the buildings on said highway or street being less than an average distance apart of one hundred feet, and as a result thereof feloniously and wilfully made an assault on the said Martha E. Vandyke, and wilfully and feloniously killed her. The fifth count differs from the fourth count, in that it charges that the defendant was engaged in the commission of a misdemeanor against the laws of the state by operating an automobile at a rate of speed exceeding one mile in eight minutes, at the intersection of said highway with a certain other highway or street in the hundred aforesaid.

PENNEWILL, C. J., charging the jury:

The indictment in this case being for manslaughter, it is necessary for us to define as clearly as we can what constitutes that crime.

[1]   Manslaughter is termed homicide and is so called because it is the killing of a human being; but it is not malicious homicide, and is, therefore, unlike murder, which contains malice. It is the unlawful killing of another, without malice, express or implied, and is either voluntary or involuntary.

[2]   Voluntary manslaughter is where one kills another in the heat of blood, and usually occurs in fighting or under great provocation. This may be termed the common kind of manslaughter and is probably somewhat familiar to you.

[3]   Involuntary manslaughter, which is less common and perhaps less familiar, is where a person in committing an unlawful act, not felonious or tending to great bodily harm, or in committing a lawful act without proper caution or requisite skill, unguardedly or undesignedly kills another. Involuntary manslaughter may arise, as you see, from an unlawful act, or from a lawful act done without proper caution or skill. *State v. Long*, 7 *Boyce* 397, 108 *Atl.* 36.

So you can understand what the state means by the charge that the defendant is guilty of involuntary manslaughter because

he killed Martha E. Vandyke in committing the unlawful act of running his car at a greater speed than the law allows, or in the performance of the lawful act of running his car within the speed limit, but without proper caution and care, and in disregard of the safety of others.

[4] Homicide by misadventure is the accidental killing of another where the slayer is doing a lawful act unaccompanied by any criminally careless or reckless conduct.

[5] We may say, and it is not disputed, that it is unlawful under the laws of this state for any person to operate or drive an automobile at a rate of speed exceeding one mile in four minutes on a public street or highway where the buildings are less than an average distance apart of one hundred feet; or at a speed exceeding one mile in eight minutes at the intersection of one public street or highway with another public street or highway. *Laws of Delaware, vol.* 28, *p.* 43. (a)

Such being the law, we say to you that any one who, while driving his automobile at a higher rate of speed than the law allows, kills another by striking him with his car, is *prima facie* guilty of negligence, and such act will make the driver criminally liable and guilty of manslaughter, if it is clearly shown by the evidence that such unlawful speed was the cause of the death. But even though the jury should not be satisfied that the driver was running his car at a higher rate of speed than the law allows, he would, nevertheless, be guilty of manslaughter if the death was caused by gross negligence on his part, that is, by a wanton, careless and reckless disregard of the rights and safety of others.

The state claims that the defendant, at the time his automobile struck and caused the death of Martha E. Vandyke, at the intersection of Fourth street and Franklin street in this city, was running on Fourth street at a speed of at least twenty miles an hour, and at such a speed that the deceased, who had alighted from a trolley car and was crossing Fourth street, could not by the exercise of reasonable care on her part avoid being struck.

The defendant claims that he was, at the time, operating his

(a) For a prosecution for manslaughter under *Chap. 10, Vol. 33, Laws of Del.*, see *State v. Dean, infra, p. 290*

automobile, in which there were three other young men, at a slow rate of speed, and with requisite care. He insists that he was keeping a proper lookout, that he blew his horn about a half block before he reached the crossing, that he had the car under control and did all that he could do, by applying his brakes, to stop his car before striking the deceased, whom he did not see until she came around the rear end of the trolley car and was in front of his automobile and not more than ten feet away; that another automobile that was standing at the curb near the crossing prevented him from operating his own automobile in such a manner that he might have avoided striking the deceased.

The state denies that the deceased walked around the rear end of the trolley car, and claims that she walked from the front door of the trolley car across the street to the place where she was struck; and also denies that there was at the time any automobile standing at the curb and near the crossing.

[6] A traveller on foot has the same right to the use of a public highway as an automobile or other vehicle, but in using a public street or highway, pedestrians and drivers of automobiles alike are bound to the exercise of reasonable care to prevent accidents, that is, such care as is reasonable and proper under the circumstances. They are required to use their senses to avoid danger so far as can be in the exercise of due care.

[7] Where a person has, by his driving of an automobile in a wilful, careless, reckless and negligent manner, or at an unlawful rate of speed, as defined by the statute, caused the death of another, the negligence of such decedent is held, under ordinary circumstances, not to relieve the driver from criminal liability for his act. The conduct of the deceased, however, is material in a prosecution of this nature, to the extent that it bears upon the negligence or wrongful conduct of the accused. *Huddy on Automobiles* (6th *Ed.*), § 765.

[8] It is the duty of a pedestrian, in attempting to cross a public street, to use his senses and exercise due care in looking to see if an automobile is approaching. But the pedestrian has the right to assume that an approaching automobile will not be driven at an unlawful rate of speed, or in a grossly negligent manner; and

if the unlawful speed or gross negligence of the driver is the direct cause of the accident, the failure of the pedestrian to correctly judge his ability to safely cross the street will not excuse or exonerate the driver.

[9]   Homicide by misadventure is, as we have said, the accidental killing of another where the slayer is doing a lawful act unaccompanied by any criminally careless or reckless conduct. If, therefore, the jury believe from the evidence that the defendant used reasonable care in operating his automobile, under the circumstances, and that the death of Martha E. Vandyke was caused by misadventure, and not because of the unlawful act or gross negligence of the defendant, he would be entitled to acquittal.

[10]   The testimony of the witnesses, its weight and effect, is entirely for the consideration of the jury, but we may say that the testimony of witnesses who testify without qualification that they heard a signal of warning given, is usually of much more weight than that of those who merely say they did not hear it.

In order to find a verdict of guilty, the jury must be satisfied that an unlawful rate of speed, or gross negligence on the part of the defendant in driving the automobile, was the direct cause of the death of Martha E. Vandyke.

[11]   In conclusion we say that if you believe from the testimony that at the time of the accident the defendant was driving his automobile in violation of the statute that governs the speed of automobiles, and that such act was the direct and proximate cause of the death of Martha E. Vandyke, your verdict should be guilty. And if you do not believe that the defendant, at the time of the accident, was running his automobile in violation of the speed statute, but are satisfied that her death was caused by gross negligence on the part of the defendant, your verdict should be guilty. If you are not satisfied that the defendant is guilty of manslaughter, but believe that he is, under the evidence, guilty of an assault, you may find him guilty of an assault only.

(The court also charged as to the presumption of innocence and reasonable doubt.)