THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. CHARLES BLAIME, PLAINTIFF IN ERROR.

Decided June 10, 1927.

**Crimes—Manslaughter—Death Through Motor Vehicle Accident —Defendant Charged With Driving His Car so That it Caused the Death of Two Men Who Were Repairing Their Own Car on the Other Side of the Street, a Very Wide Street, and Failing to Stop Until the Defendant's Car Collided With a Fence Some Distance Beyond—No Error Found in the Admission of Testimony Relating to Maps; to Negligent Driving of Defendant's Car Before the Collision, Since the Defendant was Charged With Being Intoxicated; to the Charge Relating to the Law of Negligence, or to Other Parts of the Charge.**

On error to Morris County Quarter Sessions Court.

Before Justices KALISCH, KATZENBACH and LLOYD.

For the plaintiff in error, *John W. McGeehan, Jr.* (*John M. Mills,* of counsel).

For the defendant in error, *Albert H. Holland,* prosecutor of the pleas.

PER CURIAM.

This case comes before us on a strict writ of error and under the one hundred and thirty-sixth section of the Criminal Procedure act. The plaintiff in error was convicted in the Morris County Court of Quarter Sessions on an indictment charging him with manslaughter, in that he did feloniously kill and slay Charles Haggerty and Charles Cramer.

The facts of the case are that on the 23d day of March, 1926, between eleven o'clock and midnight, the plaintiff in error was driving an automobile (a Buick sedan) on the road between Mount Tabor and Morris Plains, in Morris

county, going in a southerly direction. The deceased, Charles Cramer and Charles Haggerty, were driving a Ford roadster going in a northerly direction on the same road, and, according to the testimony, had stopped their car along the hard amasite surface, a few inches therefrom and parallel thereto, to change the left rear tire of their car. It appears that while they were engaged in this operation they were struck by the car of the plaintiff in error; that the decedents had not finished their operation was evident from the fact that the pump was found still attached to the tire after they were struck. The amasite road at this point is one hundred and fifty feet wide, with dirt shoulders five feet in width on either side. As the plaintiff in error approached the car of the deceased, he suddenly swerved to the left across the road and collided with the car of the deceased on its left side, striking both Cramer and Haggerty, and dragging them along the side of the road for a distance of about ten feet, killing Cramer instantly, and Haggerty died within a few minutes afterwards, as the result of his injuries. The car after the collision was continued on its course down the left side of the road for some distance, when it gradually left the road and finally smashed against a wire fence where it stopped.

It appears from the testimony of the plaintiff in error that he was propelling his motor car at a speed of twenty to thirty miles an hour at the time when his car was about eight hundred feet distant from the place where it collided with the automobile of the decedents, and where both of them were knocked down and killed, and that he saw, when his car was at the aforementioned distance away from the place of the collision, the automobile of the decedents, but his car kept right on its course, and in one part of his testimony he says: "Well, it looked to me as if they were standing at the rear of their car looking at the left rear wheel, and it appeared to me as if the one man just stepped backwards across the road. And the other man, I thought he walked up alongside the car and stepped on the running board."

The testimony was that after the collision and the running down of the decedents the car proceeded on its mad career for a distance of one hundred and fifty feet, smashing against a wire fence, after having scraped several trees and knocked down a sapling. There was also testimony to the effect that the plaintiff in error was intoxicated. There were no witnesses present at the time the collision occurred, except the plaintiff in error. There was, however, proof coming from several witnesses who testified that shortly before the collision they were passed by a Buick sedan of the character and description of the car of the plaintiff in error, and which they say they saw going at a very fast rate of speed.

The first point made is that the court erred in overruling the objection of counsel of plaintiff in error to the introduction in evidence of a certain map, which map contained markings and memoranda thereon showing matters and things which were claimed to be improperly on the map. It appears that when the map was admitted, the court told the jury: "The map is admitted, of course, and ladies and gentlemen of the jury, you are not at the present time to pay any attention to the three objects marked on the map to which Mr. McGeehan objected, until they are proven. You are not to pay any attention to the three marks he mentioned."

The prosecutor then and there consented to have them stricken off the map and from the consideration of the jury, and everything with reference to the matter of the wheels of Chief Hodge's car, the prosecutor stating that he expected "to get Chief Hodge to testify himself, when he will then indicate that point on the map." Of course, this could not be harmful error, since the court instructed the jury to disregard it and the state consented to have the marks stricken from the map.

The second point made is that the court erred in overruling the objection of the plaintiff in error to the following question put to the witness Edward Howell: "Q. All right, what did you see the officer do? A. I saw one of the officers, Lover or Hodges, place the foot standard of the pump in

the depression in the amasite road and it fitted exactly. It was a pump similar to this with a 'U'-shape movable foot standard."

It is apparent that the latter part of the answer went beyond a response to the question put to the witness, but on examination of the record, we fail to find that any motion was made, on behalf of the plaintiff in error, to have that portion of the answer, volunteered by the witness, struck out. The record discloses that the objection made by counsel to the question was limited, solely, as to its competency, in that it "was not binding upon the defendant and that any evidence found on the 29th of March would be inadmissible as being too remote." It is evident that the objection was not aimed at the question put to the witness, but was directed at his answer thereto, and as to 'that, as already said, no motion was made to strike out that portion of the answer, volunteered. Furthermore, we do not think the objection made was a good one. Of course, while remoteness of testimony relating to a subject-matter under investigation may affect its probative value, the remoteness of it, however, does not, *per se,* render it incompetent.

The third point relied on for a reversal is, "that the trial judge erred in admitting, over the objections of counsel of defendant, testimony as to the manner of operating a certain automobile at a point remote from the scene of the accident, to wit: Between one and one-half to three miles from the point of the accident and without first proving the identity of the car in question to have been that of the plaintiff in error."

There was proof that the automobile in question was identified as the one which the defendant was operating. The fact that this identification was not made before the testimony was adduced as to the operation of the car before the collision took place is of no consequence, since the objection made goes only to the order of the coming in of the proof, and as there was proof introduced which tended to show that it was the car of the plaintiff in error, the objection is devoid of any legal force.

The further ground urged, that it was error to admit such testimony because it related to the negligent operation of the automobile by the plaintiff in error, at a point between one and a half and three miles from the scene of the collision, seems to us to be substantial, since the conduct of the plaintiff in error in operating the automobile was a matter of pertinent inquiry on the question of his sobriety.

The fourth point relied on for reversal is, that the court erred in refusing to charge the eighth request which reads as follows: "To convict on the ground of negligence on the part of the defendant, there must be shown more gross and culpable negligence than is sufficient to render a defendant liable in a civil suit for not exercising that care which a reasonable and prudent person would exercise."

The trial judge fully and accurately charged the law governing the nature of the negligence essential to be established, where death results from the negligent act, in order to constitute such negligence criminal in character. We have a statute which declares that the driving of an automobile by a person intoxicated shall be a misdemeanor. The court very properly left it to the jury to say whether what happened was brought about by the condition of intoxication of the plaintiff in error, and if so, and that circumstance entered into the reckless operation of the automobile, then the killing of the decedents would be manslaughter.

The driving of an automobile by a person intoxicated is an unlawful act, and if the death of a person is attributable to the unlawful act, that, in law, constitutes manslaughter.

Under the fifth point, it is urged that the court erred in refusing to charge the ninth and tenth requests. The trial judge was under no legal duty to charge the subject-matter of these requests, since from a reading of the charge it appears that he had already clearly stated the legal principle governing the facts developed by the testimony, and furthermore he was under no legal obligation to apply the legal principle already stated to conditions of fact postulated by defendant's counsel, particularly where such conditions do

not include all the circumstances which would influence the conclusion of the jury. *Consolidated Traction Co*. v. *Chenowith,* 61 *N. J. L.* 554.

Again we find it necessary to state that the twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth and nineteenth assignments of errors, as well as the twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth and nineteenth specifications of causes for reversal do not comply with the legal rule, in that each of them fails to set forth the subject-matter of the request alleged to have been refused to be charged.

We take occasion also to point out here that the eighth, ninth and tenth requests considered by us are not set forth in either the assignments of errors or in the specifications of causes for reversal.

Judgment is affirmed.