**82 P.2d 274**

## STATE v. SISNEROS.

### No. 4356.

Supreme Court of New Mexico.

Aug. 8, 1938.

J. Lewis Clark, of Estancia, and G. O. Caldwell, of Mountainair, for appellant.

...Frank H. Patton, Atty. Gen., and A..M. Fernandez, Asst. Atty. Gen., for the State. :

BRICE, Justice.

The defendant was convicted of involuntary manslaughter; the charge being that he wilfully drove a motor vehicle on the public highway in a careless, heedless and wanton disregard of the rights and safety of others; and without due caution and circumspection; and in a manner that endangered persons and property, and while so driving his motor vehicle (which was in the commission of an unlawful act not amounting to a felony), he drove it into and upon one Jose D. Chavez, striking and wounding him, from which wounds the said Chavez died. A second count charged him with having. killed Chavez in the manner

stated, while under the influence of intoxicating liquor.

It is not charged in either count that the death of Chavez resulted proximately from driving an automobile in violation of the respective statutes.

Manslaughter is defined as follows: "Manslaughter is the unlawful killing of a human being without malice. It is of two kinds: 1st. Voluntary: Upon a sudden quarrel or in the heat of passion. 2nd. Involuntary: In the commission of an unlawful act not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection." Sec. 35-305, N.M.Sts.1929.

It was evidently intended to charge in the first count of the information that.the killing was in the commission of a lawful act which might produce death, in an unlawful way; based upon the violation of Sec. 11-803, N.M.Comp.Sts.1929, which is: "Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving and upon conviction shall be punished as provided in section 61 [11-861] of this act." Sec. 11-803, N.M. Comp.Sts.1929.

The second count charges the killing of Chavez by defendant, in the commission of an unlawful act not amounting to a felony;

and is based upon the violation of Sec. 11-802, N.M.Comp.Sts.1929, which is: "It shall be unlawful and punishable as provided in section 60 [11-860] of this act for any person whether licensed or not who is an habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs to drive any vehicle upon a highway within this state." Sec. 11-802 N.M.Comp.Sts.1929.

The violation of each of these statutes is a misdemeanor punishable by fine and imprisonment in the county jail.

The defense is that there was not substantial evidence to support the jury's verdict and the judgment and sentence of the court.

There is evidence of the following facts:

The deceased Chavez and one Moseley were pumping air in the left rear tire of deceased's car while it was parked at the edge of the highway, with the right wheels about one foot off the highway and with the lights off. The road, including the borrow pits, was about twenty-four feet wide, and excluding them about twenty feet wide. There were some fifteen feet of space, exclusive of the borrow pits, for defendant to use in passing the Chavez car. When Chavez saw defendant's car coming (it was estimated to be about three hundred yards away by two state witnesses), he had a person with him to flash the lights of his car on and off and then leave them on. The defendant, when near the deceased's car, turned diagonally towards it; striking the front fender and door, breaking a headlight, and then struck and killed both Chavez and Moseley. Chavez was carried about 27 feet and Moseley was held underneath the car until it stopped fifty-five feet from the place of the collision. Just as his car struck Chavez defendant applied his brakes and held them, dragging the wheels until the car was stopped by a large rock at the edge of his left side of the road, in the borrow pit. The road, at the place of the accident, is in timber and straight for some distance in each direction.

The testimony with reference to the defendant's intoxication is as follows: Martin Gallegos, who lived near the scene of the accident, went to it just after it occurred. He testified: "When I saw the defendant he was between the cars, just standing there. He went away a short distance and lay down on the ground. The justice of the peace told me to bring him back. It was my opinion that he was drunk. When I went to him he said he could not stand, but did not state why. It was dark. I thought he was drunk because I could smell whiskey on him when I got hold of him to stand him up." The justice of the peace testified that defendant appeared to be drunk, but he could not be sure. He thought this because defendant was very nervous and would not be quiet. He called the attention of the coroner's jury to defendant's condition but did not smell liquor on him. It does not appear how close he was to the defendant.

Some six or eight witnesses, including some state witnesses, testified that they saw

nothing in defendant's actions or appearance that indicated he was intoxicated; though he appeared to be excited and nervous; a condition that would necessarily follow such a tragedy. Defendant testified that he had drunk no intoxicating liquor that day.

Defendant's testimony is substantially as follows:

The night was dark and I was very close when I first saw the lights flash on and off, but I could not tell how far the car was from me because the lights blinded me, but probably fifty yards. I could see nothing —saw no one in or around the car. I was so blinded that I could not see the road, the other car, the men, or anything but the light. I could not tell which way to turn. When I saw the lights I put on my brakes, kind of easy at first, then hard when I could not see anything. The next thing that happened I struck these men. I did not know when I struck them. The lights blinded me and I tried to go to the right but could not do it because I cut the front wheel on the right and it became very heavy and I couldn't get over there. I made an effort to stop, but I was very close to them and could not. When I put on the brakes hard I guess it was just as I struck the men—I don't know. I did not know whether I was going to hit the car or go in the ditch. I could not tell that the car was on the right-hand side of the road. I was badly scared and put on my brakes. "Q. How much time from the time you first saw the lights of that car until you felt

your car hit something? A. Right then. I did not see the men at all."

It is admitted by defendant that he killed Chavez at the time and place and by the means charged in the information; but he denies that at the time of the accident he was operating his automobile recklessly, or that he was under the influence of intoxicating liquor; and therefore the death of Chavez was not the proximate result of any unlawful act of the defendant.

The court's instructions to the jury, regarding the second count of the information, was in effect, that if defendant killed Chavez by striking him with his automobile, and at the time defendant was under the influence of intoxicating liquor, the jury should return a verdict of guilty.

■ Obviously the giving of this instruction was error. If the defendant killed Chavez while committing the unlawful act of driving an automobile while under the influence of intoxicating liquor, he is not guilty of manslaughter unless the commission of that unlawful act was the proximate cause of the death of Chavez, and the jury was not so instructed. State v. McComb, 33 Wyo. 346, 239 P. 526, 41 A.L.R. 717; People v. Wilson, 193 Cal. 512, 226 P. 5; People v. Kelly, 70 Cal.App. 519, 234 P. 110. The rule is stated in a note on the subject appearing in annotations in 99 A. L.R. 772 (supported by numerous authorities), as follows: ·"In order that a person may be guilty of a criminal homicide arising from the negligent operation of an automobile or its use for an unlawful pur-

pose or in violation of law, it is uniformly held that it must be shown that such negligent operation, or use for an unlawful purpose or in violation of law, was the direct and proximate cause of the death; that is, that there was present a causal connection between the act and the death."

■ No objection was made to this instruction in the district court, nor is the error complained of here, and it is therefore not a subject for correction. But it appears from the record that on the blank form of verdict given the jury by the court, to be signed in case the defendant was found guilty under the second count of the information the jury wrote "not guilty"; underneath which the foreman signed his name. While this was not authorized, yet it makes certain that the jury did not base their verdict on the fact that the defendant was "under the influence of intoxicating liquor" at the time of the tragedy; and intended to acquit him of that charge.

Sec. 11-226, N.M.Comp.Sts.1929, enacted in 1919, is: "Any person who shall, while in an intoxicated condition, operate or attempt to operate a motor vehicle upon any public highway or within any incorporated city, town or village, within this state, shall, upon conviction, be subject to imprisonment for a period of not less than thirty days or more than one year and a fine of not less than one hundred dollars or more than one thousand dollars."

No doubt the difficulty of establishing intoxication caused the legislature of 1929 to enact Sec. 11-802, N.M.Comp.Sts.1929, supra. The Supreme Court of Arizona, in Hasten v. State, 35 Ariz. 427, 280 P. 670, in construing a statute similar to Sec. 11-802, supra, stated:

"The second and third assignments of error go to the question of what extent of influence of liquor is required to justify a conviction under our statute.

"It is appellant's claim that this means in effect 'under the influence of intoxicating liquor to the extent of impairing to an appreciable degree his ability to operate his car in the manner that an ordinarily prudent and cautious man, in the full possession of his faculties and using reasonable care, would operate a similar vehicle under similar conditions.' It is the contention of the state, on the other hand, that the law means 'any influence of intoxicating liquor, however slight,' and the trial court instructed the jury on this latter theory.

"Appellant's view of the law is apparently upheld by the Supreme Court of California. * * * On the other hand the courts of New Jersey and Oregon have upheld the state's position. * * *

"The Penal Code of 1913 (section 398) prohibited any person 'who is intoxicated' from driving a motor vehicle. In 1923 (Laws 1923, c. 28, § 1) the offender was defined as one 'who becomes or is intoxicated.' In 1927 (Laws 4th Sp.Sess.1927, c. 2, subc. 6, § 1) the language was changed so that it read 'under the influence of intoxicating liquor.' Our Legislature, it will be seen, required at first that the offender

should be under the influence of liquor to the point of actual intoxication, but evidently became convinced that many persons who had not yet arrived at that state were a menace to public safety when driving a motor vehicle, and in order so far as possible to remove danger from an admixture of liquor and gasoline provided that any person 'influenced' by the former, without specifying the extent to which such influence must go, must himself abstain from using the latter in a motor vehicle.

"It is a truism that a person who is even to the slightest extent 'under the influence of liquor,' in the common and well-understood acceptation of the term, is to some degree at least less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern automobile with safety to himself and the public. * * * The Legislature has placed no limitation on the extent of the influence required, nor can we add to their language.

"Nor will it follow, as appellant seems to fear, that every man who has taken a drink falls within the ban of the statute. If that drink does not cause him to be 'influenced' in the ordinary and well-understood meaning of the term, he is not affected by the law."

■ It was the intention of the legislature by enacting Sec. 11-802, supra, to prohibit any person under the influence of intoxicating liquor, however slight, from operating an automobile on any highway in New Mexico. A person who has taken a drink of intoxicating liquor is not necessarily under its influence; but if it affects him so that, to the slightest degree, he is "less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern automobile with safety to himself and the public" (Hasten v. State, supra), he is under the "influence of intoxicating liquor" within the meaning of the statute.

■ The crime of reckless driving and that of driving an automobile while under the influence of intoxicating liquor, are distinct offenses and are established by different evidence. A conviction of one would not be a bar to a prosecution for committing the other offense. While the evidence of intoxication might bear upon the question of whether the defendant was guilty of reckless driving, it does not necessarily prove it; but is a circumstance to be considered by the jury in deciding the issue. People v. McGrath, 94 Cal.App. 520, 271 P. 549.

■ But regardless of the statute, an intoxicated person has rendered himself unfit to guide such a dangerous agency as an automobile, the proper control of which requires the driver to be in possession of all his faculties. If in such condition he drives an automobile on the highway, that act alone may be such willful, wanton and criminal negligence and disregard for the safety and lives of others, as that a jury would be warranted in finding him guilty

of manslaughter if his operation of the automobile while intoxicated is the proximate cause of the death of another. Clark v. State, 35 Ga.App. 241, 132 S.E. 650; People v. Townsend, 214 Mich. 267, 183 N.W. 177, 16 A.L.R. 902; Benton v. State, 124 Neb. 485, 247 N.W. 21; State v. Blaime, 137 A. 829, 5 N.J.Misc. 633.

But here we have no substantial evidence that the defendant was under the influence of intoxicating liquor, and the jury came to the same conclusion, as appears from their endorsement on the form of verdict for the second count.

We do not weigh the evidence, but the conclusion of the jury that the state had not proved the defendant was, at the time of the accident, under the influence of intoxicating liquor, is apparent from a reading of the testimony. If the second count of the information had been ignored by the jury, the situation would not have been different; but we are not disposed to close our eyes to its conclusion on the question of whether the defendant was under the influence of intoxicating liquor, in view of the unsubstantial character of the state's evidence on the question.

It is the rule of the Texas court of Criminal Appeals, as it is of this court, that it will not review the testimony except to determine if the verdict and judgment are supported by substantial evidence. Calyon v. State, 76 Tex.Cr.R. 83, 174 S.W. 591.

That court had before it an almost identical question in Brown v. State, 108 Tex. Cr.R. 360, 300 S.W. 81. The defendant was convicted of a charge of violating "Article 802, P.C.1925, which penalizes the act of one driving a motor vehicle upon any public highway while the person is intoxicated or *under the influence of intoxicating liquor.*" The owner of a Ford car had parked it at the right side of the road and defendant drove his car into it from the rear. The impact caused the appellant's car to turn over and pin him under it. He was at first thought to be dead, but upon recovering consciousness, he staggered and was confused—

"while on the way to jail in the car of an officer, appellant tried to lie down, claiming that he was hurt; that he was carried down the steps from the police station by the officer.

"In his testimony appellant claimed the collision was caused by the blinding effect of lights from approaching cars and the location of Morris' car on the road. The state's evidence showed that the road was one on which an average of 12 cars a minute passed the point where the collision occurred, and that on that night (Sunday night) the road was traveled by many cars. Appellant denied the use of intoxicants, and in this he was supported by his employer. * * *

"The evidence in the case, in its effect, is not dissimilar from that before the court in the case of Chairez v. State, 98 Tex.Cr. R. 433, 265 S.W. 905. In the instant case, the only testimony upon which the witnesses claimed that the appellant was drunk

comes from their conclusion from his acts subsequent to the collision and the injury which he received. All of the circumstances upon which the unfavorable conclusion was reached by the state's witnesses are quite as consistent with his innocence as with the guilt of the appellant; that is, all his acts harmonize with his theory that his confused, staggering, and helpless condition was due to the injury rather than to intoxication. The testimony was direct that there was no whisky about the car. But one of the witnesses claimed to have noticed the odor of whisky. On that subject, it was said by this court in the Chairez Case, 98 Tex.Cr.R. [433], 435, 265 S.W. [905], 906, as follows:

" 'So explained the only testimony left to the state is that the smell of liquor was upon appellant's breath. This is denied by appellant and his witnesses, but conceding the testimony of the state's witnesses to be true in this respect, we are not willing to say that under all the facts of the case it shows appellant to have been driving an automobile at a time when he was drunk, or to any degree intoxicated.'

"The main fact upon which the culpability of the appellant depends is his intoxication. The opinion of the state's witnesses upon that subject rests alone upon the accuracy of the inference they drew from the facts which they related touching the conduct of the accused after he was injured. The facts so related, as stated above, are inconclusive, especially when tested by the law pertaining to circumstantial evidence. The evidence as a whole leaves this court in such doubt touching its sufficiency to support the verdict that it does not feel warranted in sustaining the conviction * * *."

Also see State v. Thomlinson, 209 Iowa 555, 228 N.W. 80.

The sum total of the state's testimony on this issue is, that the witness Luna thought defendant was drunk only because he smelled whisky on his breath. The effect of his testimony, stated in his words, is: "The *only thing* I saw that looked like he was drunk was the smell I got from him." The Justice of the Peace testified: "He appeared to be drunk, *but I couldn't be sure.* Q. What did he do that made you think he was drunk? How did he act? A. He was very nervous, and wouldn't be quiet." And on cross examination:

"Q. Just what caused you, Mr. Marabal, to think that he was drunk? Did you smell liquor or whisky on him? A. No.

"Q. Just what caused you to ask the jury to investigate whether or not he was drunk? A. For the reason I said a few minutes ago, —he was very restless.

"Q. And that was the sole reason of your asking the jury to make the investigation, was that he was nervous, appeared to be nervous? A. Furthermore I wanted to be sure to know whether he had been drinking or not."

▮ Testimony that defendant's breath smelled of whisky and that he was nervous and restless is not enough to prove that he

was under the influence of intoxicating liquor. We do not wonder at his being nervous, restless and sick; the natural consequence of his having unintentionally killed two men. He testified to his nervous and dazed condition.

The testimony regarding the actions of defendant are circumstances only; and are consistent with the hypothesis that he was not under the influence of intoxicating liquor at the time he killed Chavez. State **v.** Craig, 28 N.M. 110, 206 P. 513.

■ We agree with the conclusion of the jury that the state failed to prove the defendant was under the influence of liquor in any degree, and the evidence on the question could not be (and no doubt was not) considered by the jury in arriving at its conclusion that the defendant was guilty of the offense charged in the first count of the information.

■ The question then is whether there is other evidence in the record to prove that at the time of the tragedy the defendant was driving his automobile "carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger, or be likely to endanger any person or property." The statute contemplates criminal negligence, such as was the basis of the charge in State v. Harris, 41 N.M. 426, 427, 70 P. 2d 757, in which, through Mr. Justice Zinn, we stated: "We agree with the rule enunciated by the Supreme Court of Illinois, that in the case of an accidental death of a pedestrian struck by an automobile, where the proof is sufficient to establish, beyond a reasonable doubt, that under the circumstances of the injury the conduct of the driver of the machine was so reckless, wanton, and willful as to show an utter disregard for the safety of pedestrians, a conviction for manslaughter will be warranted * * *." And such was the meaning of "without due caution and circumspection" at common law.

■ While the defendant is not excused by the contributory negligence of Chavez, yet that negligence should have been taken into consideration by the jury in determining the proximate cause of the death of Chavez, State v. Bowser, 124 Kan. 556, 261 P. 846; People v. Campbell, 237 Mich. 424, 212 N.W. 97; Driggs v. State, 40 Ohio App. 130, 178 N.E. 15; State v. Disalvo, 2 W.W.Harr. 232, 32 Del. 232, 121 A. 661, and the court should have so instructed the jury.

Chavez was inviting disaster when he parked his car on the highway, without lights. The sudden turning on in the dark of the lights of an unseen car is startling to the driver of a closely approaching automobile and is likely to cause him to swerve from his course.

The State's witness Luna, who testified that defendant's car was three hundred yards from the Chavez car when it was first seen, was unable to state the number of feet to a yard; and estimated that the lights were on five minutes before the collision. This evidence is not very substantial, for Luna further testified that when

deceased told him to turn on the lights, he opened the car door, stood on the running board with his left arm through the window, and manipulated the switch with his right hand; and was in this position when the collision occurred. This testimony strongly supports the testimony of the defendant, to the effect that when the lights were flashed on he was very close to the Chavez car, possibly not over fifty yards away. Other witnesses in the car with the defendant estimated the distance at twenty-five yards. By common experience we know that the distance to a car coming in the dark, with only the headlights by which to gauge it, cannot be determined with any degree of accuracy.

But if, in fact, the defendant's car was three hundred yards away when first seen by Chavez, and was moving at only twenty-five miles an hour (as defendant testified), they were just twenty-five seconds apart. After Luna was told by Chavez to turn on the lights, he went to the car, opened the door, stepped on the running board and found the light switch in the darkness. This took several seconds, so that the two cars were separated by but few seconds, measured in time, when the lights were flashed in defendant's face. If the distance between the cars was fifty yards, as estimated by defendant, the cars were but four seconds apart; and if there were twenty-five yards between them, they were but two seconds apart at the time the lights were turned on. There is not necessarily conflict in this testimony, for the cars may have been three hundred yards apart when first seen by

Chavez and only twenty-five or fifty yards apart when the lights were flashed on.

One of the witnesses who was riding with Sisneros at the time of the accident, testified that at the time the lights flashed on, the defendant's car was at the right side of the road; and a state's witness testified that the tracks of the defendant's car showed he swerved to the left before striking Chavez' car. Two of the witnesses with the defendant testified that the lights blinded them so that they could see nothing but the lights; thus corroborating the defendant.

■ It was incumbent upon the state to prove criminal negligence, and we find no evidence of it in the record. Aside from the testimony regarding the odor of liquor on defendant's breath, the state proved that Chavez parked his car at the side of the road, without lights on a dark night, and proceeded to pump air into a tire, while standing on the highway to the left of the car; that he saw the lights of an approaching car after it passed a curve three hundred yards away, and told the witness Luna to flash the lights and leave them on. The state furnished no substantial evidence of the distance between the cars when the lights were flashed. Notwithstanding Luna testified it was three or four hundred yards, he contradicted this with the testimony that the defendant's car came into view at a curve three hundred yards away; and with his statement that his hand was still on the switch at the time of the impact. It is not shown that defendant was traveling on the left side

of the road or driving at excessive speed or that he was otherwise negligent. The only evidence tending to prove negligence was that the defendant's car swerved to the left into the Chavez car. A sober man in the control of his car and in the exercise of his faculties, does not act thus without cause. The only testimony accounting for this act of the defendant is his own and that of the two men in the car with him; all of whom testified that they were so blinded by the lights they could see nothing else; and that the impact occurred almost immediately after the lights were flashed on.

The state's testimony regarding the time that elapsed between the flashing of the lights and the impact is inconsistent; and unsubstantial except as to Luna's testimony that he was holding the door with his left arm and flashing the lights with his right hand at the time of the impact.

We think the jury was correct in its conclusion that the defendant was not guilty as charged in the second count of the information, but should have returned a verdict of not guilty generally.

The jury disregarded the perfectly consistent testimony of defendant's witnesses; but this did not relieve the state from proving that defendant's criminal negligence was the proximate cause of the death of Chavez, and it failed to meet the burden of proof. People v. Grogan, 260 N.Y. 138, 183 N.E. 273, 86 A.L.R. 1266, and annotation at page 1273.

The action of the jury can be accounted for by the seriousness of the tragedy, and the failure of the court to instruct it under either count, that the unlawful act charged must have been the proximate cause of the death of Chavez; and his failure to instruct specifically on defendant's theory of the case, regarding the flashing of the lights and consequent blinding of the defendant, which was his only affirmative defense; and his failure to instruct upon the negligence of Chavez as bearing upon the question of whether any criminal negligent act of defendant was the proximate cause of Chavez' death; neither of which was requested or given. This cannot be considered as error, because not called to the attention of the district court or presented here; but it probably accounts for the verdict.

The judgment of the district court is reversed, with instructions to dismiss the case.

It is so ordered.

HUDSPETH, C. J., and ZINN, J., concur.

SADLER and BICKLEY, JJ., dissent.

ZINN, Justice (specially concurring).

My primary reason for concurring in the majority opinion is based on my deep-grounded belief in the theory enunciated by us in our opinion in the case of State v. Harris, 41 N.M. 426, 427, 70 P.2d 757,

wherein we laid down a definite rule by which the guilt or the innocence of a driver of an automobile. who accidentally kills a person is to be measured.

Mere negligence is not sufficient. It may be sufficient to compel the driver to respond in damages. However, when it comes to responding to an accusation of involuntary manslaughter, with the possibility of a penitentiary sentence, a different rule is called into play.

In the instant case I can not find from the evidence where the appellant was guilty of reckless, wanton and wilful negligence. State v. Harris, supra.