**DISTRICT OF COLUMBIA v. BUCKLEY.**
No. 7959.

United States Court of Appeals for the District of Columbia.

Decided March 30, 1942.

Mr. Oliver Gasch, Assistant Corporation Counsel, with whom Mr. Richmond B. Keech, Corporation Counsel, and Messrs. Vernon E. West and Edward W. Thomas, Assistant Corporation Counsels, all of Washington, D. C., were on the brief, for appellant.

Mr. Edwin A. Mooers, with whom Mr. Charles A. Schaeffer, both of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and STEPHENS and RUTLEDGE, Associate Justices.

STEPHENS, Associate Justice: By an information, No. 484,036, filed in the Police Court of the District of Columbia on July 22, 1940, the appellee was charged with operating a motor vehicle in the District of Columbia on July 21 while under the influence of intoxicating liquor, in violation of an act of Congress constituting a law of the District of Columbia.[1] For

---

[1] "No individual shall, while under the influence of any intoxicating liquor or narcotic drug, operate any motor vehicle in the District. Any individual violating

convenience this charge will hereafter be described as driving while intoxicated. The appellee pleaded not guilty and demanded a jury trial, but a nolle prosequi was entered in open court on January 13, 1941.[2] By a second information, No. 497,-300, filed on January 13, 1941, the appellee was charged with operating a motor vehicle and failing to keep on the right side of the street, in violation of a District of Columbia traffic regulation.[3] This offense also was charged to have been committed on July 21, 1940.[4] For convenience this charge will hereafter be described as driving on the wrong side of the street. To this information the appellee pleaded guilty, and on January 13, 1941, a fine of twenty-five dollars was imposed upon him by Police Judge Hobart Newman. On February 15 following, a third information, No. 501,335, was filed against the appellee. This charged him, as did the first, with driving while intoxicated. To this charge he filed a plea, and later an amended plea, of autrefois convict, alleging therein that the offense of driving on the wrong side of the street, in respect of which he had pleaded guilty under the second information, and the offense of driving while intoxicated charged in the third "were the outgrowth of . . . one identical act." In this aspect of the plea, the appellee relied upon the guaranty of the Fifth Amendment to the Constitution that no person shall "be subject for the same offense to be twice put in jeopardy . . . ." He also alleged that on July 21, the day before the filing of the first information, he had been arrested by officers of the Metropolitan Police Department and booked for "Driving while Drunk"; and that on July 22, when all of the facts involved within the knowledge of witnesses and police officers had been presented to an Assistant Corporation Counsel, the latter elected to file a "Reckless Driving" charge against him in the "Traffic Court" of the District; that the Assistant Corporation Counsel prepared such a charge and sent the same to the traffic court; that the appellee was later advised of this and advised also that he was expected to plead guilty to this charge, but that he refused so to do; whereupon this charge of "Reckless Driving" was taken out of the traffic court, and then the Assistant Corporation Counsel elected to file and did file a substituted information, to wit, the first information above described, charging the appellee with driving while intoxicated. Under these further allegations of the plea and upon further facts set forth below, the appellee urges an agreement forbidding prosecution upon the third information.

To the plea of autrefois convict the appellant District of Columbia filed a so-called replication (in truth a demurrer—because it raised no issue of fact but only one of law as to the sufficiency of the plea). To this replication the appellee filed a demurrer questioning its sufficiency in law. On May 1, after a hearing before Judge George D. Neilson of the Police Court,

any provision of this subdivision shall upon conviction of the first offense be fined not more than $500 or imprisonment not more than six months, or both. . . . Upon conviction of a violation of any provision of this paragraph the clerk of the court shall certify forthwith such conviction to the designated agent of the commissioners, who shall thereupon revoke the operator's permit of such individual." Act of Feb. 27, 1931, 46 Stat. 1427, c. 317; D.C.Code (Supp. V, 1939) tit. 6, § 247(b).

[2] According to a stipulation between the parties filed in this court an Assistant Corporation Counsel "entered a nolle proseque on Information No. 484,036 and in open court handed that Information to the Assistant Clerk of the Traffic Court . . . ." on October 30, 1940, and on that same day handed to the same Assistant Clerk Information No. 497,300. But the stipulation shows also that Information No. 497,300 was filed in the police court on January 13, 1941, and that the docket of the police court in respect of Information No. 484,036 contains the following entry: "1–13–41 Nolle prossed in open court."

[3] "Vehicles shall be driven upon the right half of the highway, and the driver shall drive as closely as practicable to the right-hand edge or curb of the highway." § 23(a), Traffic and Motor Vehicle Regulations for the District of Columbia, amended June 6, 1939.

The penalty for violation of this regulation is a fine of not more than $300 or imprisonment of not more than 10 days, or both. Id. § 69.

[4] The bill of exceptions shows that by mistake the date was stated in this information as October 21, 1940, but that the District of Columbia conceded that that was erroneous and that the correct date was July 21, 1940.

this demurrer was overruled; on May 17 the same judge denied a motion to vacate judgment and a motion for rehearing. In effect, this action upon these inappropriate pleadings (all that was necessary was a demurrer to the plea) sustained the replication and thus held the plea insufficient in law upon the facts therein asserted. In short, Judge Neilson held that the second information, charging driving on the wrong side of the street, and the third, charging driving while intoxicated, as a matter of law described different offenses, and that though they "were the outgrowth of . . . one identical act," there would be no second exposure to jeopardy by trial of the appellee under the third information after his plea of guilty and sentence under the second. Judge Neilson filed a written opinion to such effect. His view was that the two offenses were different because different evidence would be required to sustain a conviction of each. On May 20 following, the appellee entered a plea of not guilty to the third information and demanded a jury trial. On June 20, he withdrew this demand. The business of the Police Court is apportioned amongst four branches, including the jury branch and the traffic branch.[5] The proceedings thus far described under the third information had been in the jury branch, over which Judge Neilson was then presiding. Upon the withdrawal of the appellee's demand for a jury trial, the case under the third information was certified by Judge Neilson to the traffic branch, in which Judge Hobart Newman, above referred to, was then presiding.

The case was called for trial before Judge Newman on June 20, and the appellee asked leave to withdraw his plea of not guilty, and to re-enter the plea of autrefois convict. This leave was granted. On June 23, Judge Newman, upon the same pleadings and therefore upon the same admitted facts as those which were before Judge Neilson, ruled, to the exact contrary of Judge Neilson's decision, that the plea was good, and thus that by trial on the third information after the plea of guilty and sentence under the second, the appellee would be twice exposed to jeopardy. Judge Newman also filed an opinion. As expressed therein, the theory of his ruling was that since the offenses charged in

the two informations were "the outgrowth of . . . one identical act," a conviction for "one phase" of that act bars prosecution for another "phase."

A petition for allowance of an appeal from Judge Newman's order sustaining the plea was filed in this court by the District of Columbia. We allowed the appeal.

Of the questions presented by the statement of points on appeal we think it necessary to determine but one, to wit, did Judge Newman err in sustaining the plea in bar. We answer this question in the affirmative.

■ 1. We held in Sims v. Rives, 1936, 66 App.D.C. 24, 84 F.2d 871, certiorari denied 1936, 298 U.S. 682, 56 S.Ct. 960, 80 L.Ed. 1402, in view of Gavieres v. United States, 1911, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489, Morey v. Commonwealth, 1871, 108 Mass. 433, cited therein, and Morgan v. Devine, 1915, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153, that "'the test of identity of offenses is whether the same evidence is required to sustain them; if not, then the fact that both charges relate to and grow out of one transaction does not make a single offense where two are defined by the statutes.'" (66 App.D.C. at page 29, 84 F.2d at page 876, quoting from Morgan v. Devine, supra, 237 U.S. at 632, 35 S.Ct. 712, 59 L.Ed. 1153). We explained the law so thoroughly and settled it so definitely for this jurisdiction in Sims v. Rives that it would be supererogation to say more here. In Berry v. United States, 1940, 72 App.D.C. 229, 113 F.2d 183, we applied this test to the two offenses of assault with intent to rape and threatening bodily harm, and held that they were distinct, citing Gavieres v. United States and Sims v. Rives.

■ Under the test stated, it is indisputable that the plea of autrefois convict in the instant case was bad. The same evidence would not sustain the two charges in question. To prove the charge under the second information of driving on the wrong side of the street it would be necessary to show only that the appellee was on July 21, 1940, operating a motor vehicle in the District of Columbia on the left side of the street. Obviously this proof alone would not support conviction of the charge in the third information of operating a

---

[5] The other two branches are the United States branch and the District of Columbia branch.

motor vehicle while intoxicated. Clearly also mere proof that the appellee on the date alleged was driving in the District while intoxicated would sustain the charge under the third information, but it would not prove that the appellee was driving on the wrong side of the street as charged in the second. No authority is necessary to support the foregoing. See, nevertheless, State v. Sisneros, 1938, 42 N.M. 500, 82 P. 2d 274, and People v. McGrath, 1928, 94 Cal.App. 520, 271 P. 549.

In support of Judge Newman's decision sustaining the plea in bar, the appellee cites Landers v. State, 1935, 26 Ala.App. 506, 162 So. 550, and Trawick v. City of Birmingham, 1929, 23 Ala.App. 308, 125 So. 211. These are decisions of an intermediate appellate court in Alabama[6]—the Court of Appeals—holding that if two offenses, though themselves separate and distinct as violations of distinct statutes, are nevertheless the outgrowth of one act, they constitute identical offenses within the meaning of the double jeopardy clause. These cases were apparently the basis of the decision and opinion of Judge Newman. A judge of the Police Court is not warranted in looking to decisions of the Court of Appeals of Alabama rather than to those of the highest appellate court of his own jurisdiction for the law.

 The brief of the appellee urges in further support of Judge Newman's ruling that the plea in bar was good, that in the facts of the instant case there appears an agreement between the Assistant Corporation Counsel and the appellee for the withdrawal of the first information, to which the nolle prosequi was entered, involving the more serious charge of operating a motor vehicle while intoxicated, in consideration of a plea of guilty to the less serious charge in the second information of operating a motor vehicle on the wrong side of the street; the appellee urges that this agreement should be enforced by the court, and that as a result of it the District of Columbia was forbidden to file the third information. But the facts are barren of any express agreement to such effect. And in view of the essential aspect of a nolle prosequi as distinguished from a dismissal with prejudice, that the former does not forbid the filing of a second information on the same charge (c.f. Wolff v. United States, 1 Cir.,

1924, 299 F. 90), it would be unwarranted, without more, to hold that there was an implied agreement. Moreover, such an agreement would not be binding. In re Whiskey Cases, 1878, 99 U.S. 594, 25 L.Ed. 399; Buie v. United States, 5 Cir., 1935, 76 F.2d 848, certiorari denied 1935, 296 U.S. 585, 56 S.Ct. 97, 80 L.Ed. 414. In the latter case where upon conflicting evidence such an agreement was urged, the Circuit Court of Appeals, speaking through Foster, Circuit Judge, said:

"... On this conflicting evidence it was for the District Judge to say whether the agreement was proven. But we deem that immaterial. It is elementary that an indictment may be dismissed and the defendant reindicted for the same offense, if he had not been put in jeopardy. Appellant cites a number of cases to the effect that the United States is bound by an agreement entered into by her counsel in a civil case; other cases holding that where revenue claims have been compromised and paid criminal prosecutions are barred, and other cases holding that where witnesses have been compelled to give testimony against themselves before an investigating authority immunity results. It would be useless to review these cases, as none of them are in point, and we are not aware of any decision, either controlling or persuasive, that would support the contention of appellant. We have no hesitancy in holding that the government was not estopped to prosecute appellant in this case regardless of whether an agreement was made as alleged. The assignment is without merit." [76 F.2d at page 849]

 The opinion of Judge Newman urges that where the statutory definition of offenses is such that more than one may grow out of the same transaction, it is oppressive for the prosecution to file and prosecute several charges successively, that either all should be filed and disposed of at one time, or the prosecution limited to the first it selects and presses to conviction. But the definition of offenses is for the legislative authority, and the determination of whether and when to prosecute for more than one growing out of the same transaction is a matter of policy for the prosecuting officer and not for the determination of the courts. Moreover, while under some circumstances it might be unfair to prosecute for more than one offense,

---

[6] The highest appellate court in Alabama is the Supreme Court of Alabama.

under others the danger to the public from the conduct of an offender might be such as well to warrant his prosecution for all offenses committed. There is an insufficient disclosure of the circumstances of the instant case to warrant any conclusion, even if we had authority to reach one, as to whether the action of the Corporation Counsel's office in the instant case was fair or not fair.

In accordance with the foregoing, the order of Judge Newman sustaining the appellee's plea in bar is set aside, and the case is remanded to the Police Court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

RUTLEDGE, Associate Justice (concurring).

I concur in the result, and in the opinion except as it may imply that no more is necessary in any case, to determine double jeopardy, than to apply the "same or different evidence" test.

That test is useful to spell out the elements of the crimes charged, and therefore to disclose what, if any, difference exists between them. If there is none that ends the matter. But if difference is disclosed there is in my view always another step which must be and is taken either intuitively or with deliberation. That is to weigh the difference to determine whether it is substantial or too minor to be material for purposes of double jeopardy. The court must evaluate as well as spell out the difference, and determine whether the element it affects is sufficiently important in relation to other elements involved in both crimes to justify refusal to apply the constitutional protection.

Usually the difference will be substantial and this will be immediately apparent when the test is applied. In other words, most crimes have substantial differences. But in some instances legislative refinement has defined generically identical offenses with narrow differences in intent or in the means or methods of perpetration, e. g., assault with various specific intents and with variously specified weapons. Some of these differences are substantial, others too slender for, in effect, nullifying the constitutional protection against double jeopardy. When they are so or the question is doubtful, the second step should be

taken consciously and deliberately, not ignored or taken automatically as is done when the process stops with applying the "same or different evidence" test. That can only tell what the difference is, not whether it is important enough to prevent operation of the constitutional guaranty.

The "included offense" doctrine is the accepted escape. But it is a confusing and in some instances a contradictory one, in relation to the "same or different evidence" test. By hypothesis there is a "greater" and a "lesser" offense, and therefore a difference in the crimes and in the evidence necessary to prove them. The only logical exception is where the "greater" is defined in general terms, the "lesser" in specific, and the evidence offered to prove the general would prove the specific also. Thus, proof of the use of firearms would sustain "assault with a deadly weapon" as well as "assault with firearms." In this instance the "same or different evidence" test would disclose the identity of the offenses, but it would not do so if the evidence to prove "assault with a deadly weapon" showed use of an ax. The test therefore is useful only in relation to the evidence *actually offered,* not in relation to that *required to prove* the greater offense.

So limited, the test is useful as showing identity when general and specific coincide in actual proof, and difference where they do not. The mere finding that the "greater" offense "includes" the lesser does not end the matter. It is only the first step in ascertaining whether difference exists. After that, it remains to ascertain whether it does on the proof actually tendered and if so, as in other cases, whether it is substantial. Only when the "included offense" doctrine is restricted to the specific application and then is followed by application of the "same or different evidence" test, as in other cases, can the two be reconciled. They are in conflict when it is ascertained merely that the same evidence may sustain the "greater" and the "lesser" offense, and from that the conclusion is drawn they are identical, without reference to whether that evidence is offered in the particular case. The "included offense" exception, as it is usually stated, is therefore too broad to be consistent with "the same or different evidence" test. But when the two are reconciled by restricting the former to application of the latter

to the evidence actually tendered, the process then becomes the same as in other cases, and when difference is disclosed it must be found, or held implicitly, to be substantial unless the constitutional protection is to be nullified by highly refined legislative discrimination in the definition of crimes.

The legislature should have wide leeway in this function. But, unless the guaranty is meaningless, the power cannot be unlimited. Refinement has gone far in some instances, particularly with reference to minor offenses. On narrow, technical distinctions of method, means and specific intent, men may be convicted of the same general offense once, twice or many times, simultaneously or successively, as the prosecuting officials determine in their discretion. Some of the refinements are so thin that, if they hold, the old and substantial protection against trial or conviction more than once for the same offense is but a shadow of its intended self. The "same or different evidence" rule only points out the difference. It puts no limit to how narrow the legislature can make it. I think the courts have a duty to do that, as well as one to find out whether the legislature has made a difference. In other words, it is for them finally to say whether a distinction prescribed by the legislature is strong enough to overcome the constitutional guaranty. Under the "same or different evidence" test alone, they well nigh abandon that function in some cases where difference is very slight.

In this case the element of intoxication while driving is so different from merely driving on the wrong side of the street while sober that hardly more is necessary than to point out the difference. The too well known consequences of that element for increasing the hazard of driving to all concerned need not be stated. They make the offenses both technically and substantially different. For that reason I concur in the result and in the opinion of the court, with the qualification that the second step should be taken with the same attention as the first when the circumstances require it. Here the offenses charged were clearly and substantially different.