**FAY, U. S. Atty., v. MILLER.**

No. 10364.

United States Court of Appeals
District of Columbia Circuit.

Argued March 15, 1950.

Decided July 3, 1950.

Mr. Samuel K. Abrams, Assistant United States Attorney, with whom Mr. George Morris Fay, United States Attorney, and Messrs. Joseph M. Howard and Ross O'Donoghue, Assistant United States Attorneys, were on the brief, for appellant.

Mr. Myron G. Ehrlich, Washington, D. C., with whom Mr. Joseph Sitnick, Washington, D. C., was on the brief, for appellee.

Before EDGERTON, BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

On March 25, 1949, the Chesapeake and Potomac Telephone Company of Baltimore City, Maryland, received a letter from the United States Attorney for the District of Columbia, stating:

"This office is in possession of competent evidence that the following telephone number WArfield 5061, located at 4923 LaSalle Road, Avondale, Maryland, is being used to aid and abet in the violation of statutes prohibiting gambling in the District of Columbia. I, therefore, request that this telephone equipment be disconnected and that such telephone service be discontinued."

The Company began compliance with the request by sending notice to appellee that his telephone service would be discontinued on Tuesday, April 5, 1949.[1] On April 1, appellee sued in the District Court to enjoin (1) the Telephone Company from disconnecting his telephone and (2) the United States Attorney from requesting and

1. The regulations of the Company, approved by the Maryland Public Service Commission, authorize it to discontinue service for illegal use, as follows:

*Use of Service for Unlawful Purposes.*—The service is furnished subject to the condition that it will not be used for an unlawful purpose. Service will not be furnished if any law enforcement agency, acting within its jurisdiction, advises that such service is being used or will be used in violation of law, or if the Telephone Company receives other evidence that such service is being or will be so used. [General Exchange Tariff, Vol. 1, Regulations of Public Service Commission of Maryland.]

coercing such action. A preliminary injunction was granted to appellee in both suits, apparently because there was no evidence that the telephone had been used to place bets in the District of Columbia. Only the United States Attorney appeals from the order of the District Court.

Appellant argues that he is neither a necessary nor a proper party to the suit before us because he merely "requested" the action taken, just as any private individual might have done; that he acted within the scope of official discretion and, hence, his action is not subject to review.

■ We agree that appellant is neither an indispensable nor a necessary party in the suit against the Telephone Company. All the relief requested by appellee can be, and has been, obtained from the Company. It alone threatens to deprive him of the service which he seeks to protect. "If [it] desists in those acts, the matter is at an end."[2] The same considerations do not apply to the determination of whether or not he is a proper party. Were it not for a more fundamental question, we have no doubt that the considerable part played by appellant in these proceedings would warrant his being joined as a proper party under the liberal joinder provisions of the Federal Rules.[3]

■ The central issue in the case, in its present posture, is whether or not the United States Attorney shares the sovereign's immunity from suit. Unless he is acting pursuant to an unconstitutional statute, or is applying a valid statute in an unconstitutional manner, or is acting outside his statutory authority—in which events he is said to be acting individually rather than officially—no injunction will lie against him.[4]

■ The authority of the United States Attorney to make the request is not challenged. Nor do we think successful challenge could be made, for the United States Attorney is vested with broad discretion to protect the public from crime, such discretion being derived both from statutory grant[5] and the authority of the Attorney General at common law.[6] In the discharge of his duty to the citizens of the District of Columbia, it is proper for him to call to the attention of the Maryland Company the fact that he has evidence that its instruments are being used to violate District of Columbia laws. The complaint merely asserts that appellant did not have enough evidence to support his conclusion. Given the most liberal construction possible, it charges only that appellant acted tortiously in inducing the Company's breach of its contract with appellee. Although such tortious action on the part of a public officer has often been said to be outside his authority, on the theory that no one may authorize a tort, the Supreme Court has recently narrowed prior doctrine. In Larson v. Domestic & Foreign Corp., the Court specifically rejected the argument that "an officer given the power to make decisions is only given the power to make correct decisions."[7] It held that "if the actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign, whether or not they are tortious under general law, if they would be regarded as the actions of a private principal under the normal rules of agency. A Government officer is not thereby necessarily immunized from liability, if his action is such that a liability would be imposed by the general law of torts. But the action itself cannot be enjoined or directed, since

2. Williams v. Fanning, 1947, 332 U.S. 490, 494, 68 S.Ct. 188, 189, 92 L.Ed. 95.

3. Rule 20, Federal Rules of Civil Procedure, 28 U.S.C.A.

4. Larson v. Domestic & Foreign Corp., 1949, 337 U.S. 682, 701–702, 69 S.Ct. 1457, 93 L.Ed. 1628.

5. 28 U.S.C.A. § 507.

6. See Confiscation Cases, 1868, 7 Wall 454, 74 U.S. 454, 457, 19 L.Ed. 196; Yaselli v. Goff, 2 Cir., 1926, 12 F.2d 396, 404, 56 A.L.R. 1239, affirmed, 1927, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395; Cooper v. O'Connor, 1938, 69 App. D.C. 100, 105 et seq., 99 F.2d 135, 140 et seq., 118 A.L.R. 1440; United States v. Brokaw, D.C.S.D.Ill.1945, 60 F.Supp. 100, 101.

7. 1949, 337 U.S. 682, 695, 69 S.Ct. 1457, 1464, 93 L.Ed. 1628.

it is also the action of the sovereign."[8] Since there is neither allegation nor proof that appellant acted outside the bounds permitted him by the Constitution, statute or common law, the only charge being that he acted incorrectly, his action is that of the United States and may not be enjoined.

An important limitation is implicit in Larson and should be clearly stated here so that our decision will not be too broadly interpreted. It was intimated there that the existence of other possible remedies may save official action which might otherwise be unconstitutional. The Court said: "There is no claim that [the officer's] action constituted an unconstitutional taking[9] * * *. There could not be since the respondent admittedly has a remedy, in a suit for breach of contract, in the Court of Claims."[10] Similarly, in distinguishing United States v. Lee,[11] the Court pointed out that an action against the officer was permitted there "only on [the] assumption" that if title to the contested property were in the plaintiff, "the taking of the property by the defendants [officers] would be a taking without just compensation and, therefore, an unconstitutional action."[12] Since no compensatory remedy for such a taking was then available,[13] the withholding of that which was found to be plaintiff's was held to be unconstitutional and hence individual action on the part of the officer. Thus, "the availability of a remedy in the Court of Claims may, in some cases, be relevant to the question of sovereign immunity."[14]

In this case, too, any constitutional objection—on the ground that official action is depriving the subscriber of substantial rights without "at some stage an opportunity for a hearing and a judicial determination"[15] is obviated by the fact that complete relief may be obtained from the Telephone Company. The United States Attorney's "request" is translated into threatened or actual injury only when the Company acts pursuant to it. There is little doubt that such an official request effectively sets in motion a machinery for removal of the telephone.[16] But at the point of imminent or actual removal, the subscriber may obtain a hearing on the merits of the charges against him by suing to enjoin the Company.[17] If the Company cannot then sustain its burden of proof by mustering a preponderance of the evidence to support the charge of illegal use, an injunction will issue against it.[18] And if it has acted only because of the United

8. Ibid.

9. Id. 337 U.S. at page 703, 69 S.Ct. at page 1468.

10. Id. 337 U.S. at page 703 note 27, 69 S.Ct. at page 1468. See also Yearsley v. Ross Construction Co., 1940, 309 U. S. 18, 21, 60 S.Ct. 413, 84 L.Ed. 554; Hurley v. Kincaid, 1932, 285 U.S. 95, 104, 52 S.Ct. 267, 76 L.Ed. 637.

11. 1882, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171.

12. Larson v. Domestic & Foreign Corp., supra, note 7, 337 U.S. at page 697, 69 S.Ct. at page 1465, 93 L.Ed. 1628.

13. Id. 337 U.S. at page 697 note 17, 69 S.Ct. at page 1465, 93 L.Ed. 1628.

14. Id. 337 U.S. at page 697 note 18, 69 S.Ct. at page 1465.

15. Ewing v. Mytinger & Casselberry, Inc., 70 S.Ct. 870, 873.

16. See note 1, supra.

17. Andrews v. Chesapeake & Potomac Telephone Co., D.C.D.C.1949, 83 F. Supp. 966. The Maryland statute requires that telephone service be made available to all without discrimination. 23 Anno.Code, § 411 (1939). The District of Columbia Code is to the same effect. 43 D.C.Code, § 301 (1940). As to the right to compensatory damages, see Sommerville v. Chesapeake & Potomac Telephone Co., 1919, 49 App. D.C. 3, 258 F. 147.

18. Andrews v. Chesapeake & Potomac Telephone Co., supra, note 17, 83 F. Supp. at page 968; In re DiBenedetto, Sup.1948, 83 N.Y.S.2d 920, 921; Whyte v. New York Telephone Co., Sup.1947, 73 N.Y.S.2d 138, 139; Pennsylvania Publications, Inc. v. Pennsylvania Public Utilities Comm., 1944, 349 Pa. 184, 36 A.2d 777, 779–781, 153 A.L.R. 457; Cologiavanni v. Southern New England Telephone Co., 65 PUR (N.S.) 171, 174–175 (Conn.Pub.Utilities Comm. 1946). See generally, Bachelder, The Suppression of Bookie Gambling by a Denial of Telephone and Telegraph Facilities, 40 J.Crim.L. & Criminol. 176 (1949).

States Attorney's request, it still must justify its action by a preponderance of the evidence in order to keep the telephone disconnected.

We are mindful of the fact that this case does not involve property rights alone, as does Larson, but concerns official action in an area close to the criminal law. It involves the indirect application of penal-like sanctions at the behest of a law-enforcement officer. If a complete remedy were not available against a third party, as here, such sanctions might be suffered without any of the traditional assurances that the fundamentals of fair play embodied in procedural due process are observed. As we have indicated, however, this case arises in a context where the subscriber is assured of his day in court by way of a suit to enjoin the Telephone Company. We do not reach the situation where an injunction suit against the officer is the only available remedy against official action which deprives, or threatens to deprive, a person of substantial rights.

We think appellant was not subject to suit because his action here was that of the United States. The injunction outstanding against him should be dismissed. Since the Telephone Company did not appeal, we do not enter into a discussion of the merits of the controversy between it and appellee; the injunction against the Company remains undisturbed.

Reversed.