Robert F. KENNEDY, Attorney General of the United States, Appellant,

v.

Victor RABINOWITZ and Leonard B. Boudin, Appellees.

No. 17105.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 23, 1963.

Decided April 4, 1963.

Petition for Rehearing En Banc Denied En Banc May 1, 1963.

Mr. George B. Searls, Attorney, Dept. of Justice, for appellant.

Mr. David Rein, Washington, D. C., for appellees.

Before WILBUR K. MILLER, FAHY and WRIGHT, Circuit Judges.

WRIGHT, Circuit Judge.

The Foreign Agents Registration Act [1] provides criminal penalties [2] against anyone who represents a foreign government in this country and fails to register with the Attorney General. Certain exceptions are provided. [3] Appellees are attorneys at law representing the Republic of Cuba who have been requested by the Attorney General to register pursuant to the Act. Instead of registering, appellees filed this declaratory judgment action, alleging that since their representation of Cuba is limited to "legal matters, including litigation, involving the mercantile and financial interests of the Republic of Cuba," they are exempt from registering under Section 3(d) [4] of the Act. They pray for a judgment so declaring. In effect, therefore, this proceeding is an effort to restrain the Attorney General from prosecuting appellees under the Act. The District Court denied appellant's motion for judgment on the pleadings and certified this action for appeal. [5]

The threshold question is presented by the venerable, but creaking, doctrine of sovereign immunity. There is no suggestion that the United States has consented to this suit or that the Attorney General is being sued as an individual. Indeed, the named defendant is "The Attorney General of the United States," the name of the current office holder not being included. [6] Consequently, the action, if maintainable at all, must fit the fiction created by Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). There it was held that where an officer acts unconstitutionally, "he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." 209 U.S. at 160, 28 S.Ct. at 454, 52 L.Ed. 714. Since in such circumstances the officer is theoretically being sued as an individual, the doctrine of sovereign immunity provides no bar. Thus a fiction is indulged to circumvent sovereign immunity.

Ex parte Young, supra, has spawned a welter of cases, all seeking to get under its umbrella. [7] The confusion which ensued has been to some extent relieved by the holding in Larson v. Domestic & Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628, (1949), reiterated in Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962), that an officer of the United States may indeed be sued in his individual capacity where the officer's action is "not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void." 337 U.S. at 702, 69 S.Ct. at 1467, 93 L.Ed. 1628 and 369 U.S. at 647, 82 S.Ct. at 983, 8 L.Ed. 2d 168.

 It is not alleged in the complaint that prosecution of the appellees under the Act would be unconstitutional [8] or outside the Attorney General's

---

1. 52 Stat. 631, as amended, 22 U.S.C. §§ 611 et seq.

2. 52 Stat. 633, as amended, 56 Stat. 257, 22 U.S.C. § 618.

3. 52 Stat. 632, as amended, 56 Stat. 254, 22 U.S.C. § 613.

4. 52 Stat. 632, as amended, 56 Stat. 254, 22 U.S.C. § 613(d).

5. 28 U.S.C. § 1292(b).

6. The Attorney General's name first appeared on the appeal papers in this court.

7. See 3 Davis, Administrative Law, ch. 27 (1958).

8. In arguing that this is an appropriate case for declaratory judgment, appellees assert that the penalties are so severe that they dare not await prosecution. Therefore, they assert, a civil forum must be available or the Act can never be tested. A civil forum may be available under these circumstances, for this argument may raise a constitutional question. Yakus v. United States, 321 U.S. 414, 438, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Ex parte Young, supra, 209 U.S. at 145–148, 28 S.Ct. at 447–449, 52 L.Ed. 714. Appellees, aided by competent counsel, for reasons best known to themselves, have decided not to raise the constitutional issue. Under the circumstances, and for

statutory powers.[9] Appellees' primary argument on the unconsented suit point seems to be that "the doctrine that a suit against a government officer in his official capacity may be a suit against the United States applies only in the situation where the suit is either for government funds or for specific property in the possession of the government." We are not aware that the doctrine of sovereign immunity is so circumscribed. If "[t]he 'essential nature and effect of the proceeding' may be such as to make plain that the judgment sought would * * * interfere with the public administration," the suit is one against the sovereign. Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947), citing Ex Parte State of New York, No. 1, 256 U.S. 490, 500, 502, 41 S.Ct. 588, 65 L.Ed. 1057 (1921).[10] Obviously, restraining the Attorney General from enforcing the criminal laws of the United States would "interfere with the public administration."

■ Appellees rely heavily on Professor Borchard in arguing that civil procedure should be substituted for criminal procedure in the area not involving moral turpitude, particularly "where there is grave uncertainty as to what practices the general terms of a law prohibit." Borchard, Declaratory Judgments (2d Ed. 1941), p. 1021. They also assert with Professor Borchard "that one of the main and most beneficial functions of declaratory judgment procedure is as a substitute for criminal prosecutions in the area of regulation of business practices." Philosophically, we may agree. But the Congress has decreed otherwise, at least so far as agents representing foreign governments are concerned. Consequently, since appellees have failed to challenge the constitutionality of the Act, on its face or as applied, or the authority of the Attorney General to enforce it, this case should be dismissed on the pleadings as an unconsented suit against the United States.

So ordered.

FAHY, Circuit Judge (dissenting).

The suit does not seem to me to be one to enjoin a criminal prosecution, which equity ordinarily will not entertain. The Foreign Agents Registration Act is not such a criminal statute as is involved in cases which illustrate the equitable doctrine. It is primarily a regulatory statute, with a penalty of not more than

---

the purposes of this motion, we accept appellees' pleadings as presented.

9. Appellees do argue in their brief that their activities "are expressly exempted from the Act by the terms of the Act itself" and that to this extent appellant's demand that they register is "in excess of his statutory authority." The Attorney General, however, is charged with enforcement of all the criminal laws of the United States, 28 U.S.C. § 507. Such duty obviously carries with it the authority to construe the individual statutes and apply them to the facts before him. At most, appellees' claim is that appellant has erred, or will err, in construing the law. But the relief for which appellees here pray "can be granted, without impleading the sovereign, only because of the officer's lack of delegated power. A claim of error in the exercise of that power is therefore not sufficient." Larson v. Domestic & Foreign Corp., supra, 337

U.S. at 690, 69 S.Ct. at 1461–1462, 93 L. Ed. 1628. See also United States v. Thompson, 251 U.S. 407, 413, 40 S.Ct. 289, 64 L.Ed. 333 (1920); Goldberg v. Hoffman, 7 Cir., 225 F.2d 463 (1955); Fay v. Miller, 87 U.S.App.D.C. 168, 171, 183 F.2d 986, 989 (1950); United States v. One 1940 Oldsmobile Sedan Automobile, 7 Cir., 167 F.2d 404 (1948); District of Columbia v. Buckley, 75 U.S.App.D.C. 301, 304, 128 F.2d 17, 20 (1942), cert. denied, 317 U.S. 658, 63 S.Ct. 57, 87 L. Ed. 529 (1942); United States v. Segelman, W.D.Pa., 86 F.Supp. 114 (1949); United States v. Brokaw, S.D.Ill., 60 F. Supp. 100 (1945).

10. See also Larson v. Domestic & Foreign Corp., supra, Note 9, 337 U.S. at 688, 69 S.Ct. at 1460, 93 L.Ed. 1628; Stanley v. Schwalby, 147 U.S. 508, 13 S.Ct. 418, 37 L.Ed. 259 (1893); Reisman v. Caplin, 115 U.S.App.D.C. ——, 317 F.2d 123, 125.

$10,000 fine, or imprisonment for not more than five years, or both, for willful violation of any of its provisions. Section 618(a). It is not a crime to be a foreign agent, but to act as one unless a specified registration statement is filed, or unless one "is exempt from registration under the provisions of this subchapter." Section 612(a). Appellees allege that they are within the statutory exemption of "[a]ny person engaging or agreeing to engage only in private and nonpolitical financial or mercantile activities in furtherance of the bona fide trade or commerce of such foreign principal * * *." Section 613(d). They allege that they are lawyers and that their representation of Cuba is limited to "legal matters, including litigation, involving the mercantile and financial interests of the Republic of Cuba," that their retainer does not cover advice or representation involving public relations, propaganda, lobbying, or political or other non-legal matters, and that they have not advised, represented, or acted on behalf of Cuba in any such matters. The answer of appellant alleges that he does not have sufficient information to form a belief as to the truth of these allegations respecting matters other than legal. Appellant denies, however, that appellees come within the exemption and has insisted that they file the registration statement. In this situation the District Court, I think properly, denied appellant's motion for judgment on the pleadings.

Since the Attorney General is responsible for administering and enforcing the statute, appellees were under the necessity either of filing the detailed information required by a registration statement and acquiescing in the status attributed to them by appellant, or of being criminally prosecuted and risking the statutory penalties, unless they could secure a declaratory judgment as to their status. There is more in this situation than the impact upon appellees of the mere existence of the statute, and more too than a mere difference of opinion. There is a demand and insistence by appellant that they file the registration statement. A case or controversy—a justiciable issue—thus arose. See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

The suit is not accurately described as one to enjoin a criminal prosecution. It is to determine the existence of an obligation on appellees' part affirmatively to register in circumstances which create a justiciable issue in that regard. No administrative remedy is provided and there is no remedy at law comparable in adequacy to that available through the Declaratory Judgment Act. See Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). The Act combines with equity to afford a remedy, for equity is served by not forcing registration in the face of well-founded doubt of the need to do so, until that doubt is resolved—a doubt which we must assume in the present posture of the case is held in good faith. See Terrace v. Thompson, 263 U.S. 197, 44 S. Ct. 15, 68 L.Ed. 255 (1923). The thrust of the suit is presently too far removed from an effort to enjoin a criminal prosecution to come within the principle adverted to under which equity sometimes denies itself jurisdiction. This principle long antedated the Declaratory Judgment Act and when now invoked should be considered in conjunction with that Act.[1]

1. Appellant cites Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), and Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941), both of which, however, involved efforts to have a federal court enjoin state action, which turn upon different considerations. Nor are Eccles v. Peoples Bank, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784 (1948), United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), and Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945), also cited, controlling, because no real controversies were presented for declara-

Nor, as it seems to me, is the suit one against the United States within the sovereign immunity doctrine which protects the Government, without its consent, from judicial interference in the disposition of its property or in its appropriate functioning. Reisman v. Caplin, 115 U.S.App.D.C. ——, 317 F.2d 123 (1963). The American approach to this doctrine has not precluded suits against officials acting in excess of constitutional or statutory authority. See, e. g., Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L. Ed. 817 (1951). Appellees do not claim, however, that the statute is unconstitutional, so the question narrows to whether the effort of the appellant to require appellees to register is within his statutory authority as that concept has been used in defining the sovereign's immunity. See Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). The Attorney General has general authority and responsibility for administering this statute as well as for enforcing federal law generally. But there is a question— a judicial question—on the pleadings in this case as to his authority to require appellees to register. True it is that his insistence that they do so is within his authority in the sense that he is entitled to make a decision bearing upon his administration of the statute, as officials generally are entitled to do in carrying out their responsibilities; but even though such a decision becomes a first step in setting in motion the processes of government, when it gives rise to a controversy such as we have here the basis for the immunity disappears.[2] For in such circumstances a suit against an officer of the United States neither affects the disposition of property as in Larson nor, as in Reisman, interferes in an unwarranted manner

with the functioning of government (the "public administration" of Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)).

Unlike the situations in either Larson or Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962), this suit does not require the appellant to do or not to do anything. In Larson an injunction was sought prohibiting the Administrator of the War Assets Administration from selling certain property to anyone but plaintiff, who claimed to have a valid contract to buy it from the Administrator. The Court referred to "no allegation of any statutory limitation" on the Administrator's powers as a sales agent. In Malone the action sought to eject a Government officer from land which he occupied under claim of title from the United States. Referring to Larson the Court pointed out that there "the plaintiff had not made an affirmative allegation of any relevant statutory limitation upon the Administrator's powers." In our case appellees rely upon a congressionally built-in exemption which is a limitation upon the statutory authority of appellant.

The suit is designed to ascertain what the statute contemplates. If appellees are held to come within the exemption the law is vindicated. If they are found not to come within the exemption appellant remains free to proceed as he deems advisable. In neither case does the suit seek to require appellants to act affirmatively, to surrender property, or even to stay his hand except as understandable self-restraint leads him to do so at present. The Government does not contend that declaratory judgments may never be entered against officers of the United States or that an express consent to be sued is always necessary. See Greene v. McElroy, supra, where there was no dis-

---

tory judgment in those cases (except of course as to the federal employee in Mitchell who alleged that he had been engaging in political activity said to be covered by the Act.)

2. The existence of a justiciable controversy does not fall away because the decision has not been pursued further during the pendency of this litigation.

Anti-Fascist Refugee Committee v. McGrath, supra, where the Court sustained jurisdiction and negated the possibility of immunity; and United Public Workers v. Mitchell, supra.[3]

The exemption provision is contained in the statute itself and must be construed howsoever the status of appellees is determined. For this purpose the Declaratory Judgment Act is peculiarly appropriate. Of course that Act is not a waiver of sovereign immunity, but it is a means of determining the issue upon the resolution of which the application of the immunity turns.

The lines of the immunity doctrine are elusive. As this court suggested in Reisman, policy considerations are strong determinants in cases raising the problem. The majority opinion in this case does not discuss the policy reasons which serve to justify the result reached. cussion of the immunity doctrine; Joint It seems to me desirable to encourage judicial settlement of a legal dispute free from the coercive effect of penal sanctions when the dispute arises out of a regulatory statute like the one before us.[4] As indicated above the dispute presents a justiciable issue. Accordingly there was no abuse of discretion in retention of jurisdiction by the District Court to decide whether to give a declaratory judgment. I would therefore affirm.

3. The Supreme Court has said: "Courts of justice are established, not only to decide upon the controverted rights of the citizens as against each other, but also upon rights in controversy between them and the government * * *." United States v. Lee, 106 U.S. 196, 220, 1 S.Ct. 240, 260–261, 27 L.Ed. 171 (1882).

4. A leading authority has indicated that courts have been too uncritical and unanalytical in their application of the doctrine, with its exceptions created in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). See 3 Davis, Administrative Law, pp. 545–576 (1958).

In his dissenting opinion in Larson, Mr. Justice Frankfurter took occasion to say: " 'Sovereign immunity' carries an august sound. But very recently we recognized that the doctrine is in 'disfavor.' [Citing Federal Housing Administration v. Burr, 309 U.S. 242, 245 [60 S.Ct. 488, 84 L.Ed. 724] (1940)]. It ought not to be extended * * *." 337 U.S. at 723, 69 S.Ct. at 1478, 93 L.Ed. 1628.