Stephen G. NEMECKAY, Plaintiff,

v.

Trooper Denise RULE, a State of Michigan police officer; and Trooper Scott Nichols, police officer; jointly and severally, Defendants.

No. 94–CV–71765–DT.

United States District Court,
E.D. Michigan,
Southern Division.

July 31, 1995.

Justin Ravitz, Southfield, MI, for plaintiff.

Margaret A. Nelson, Lansing, MI, for defendants.

### OPINION AND ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. INTRODUCTION AND FACTUAL BACKGROUND

On April 7, 1994, Plaintiff Stephen G. Nemeckay filed a three-count complaint in Macomb County Circuit Court against Defendant Trooper Denise Rule. Defendant Rule removed the case to this Court on May 5, 1994, based on federal question jurisdiction. On November 3, 1994, Plaintiff filed an amended complaint in which he added Defendant Trooper Scott Nichols, and reduced the number of counts to two.

Plaintiff was arrested by Defendants Rule and Nichols on March 22, 1992, for driving under the influence of alcohol. Weather conditions were poor and he was driving at an excessive rate of speed. After performing poorly on a series of sobriety tests, he was arrested, handcuffed and placed in the back of Defendants' State Police cruiser. The officers then contacted a local towing company. They waited at the scene for several minutes until the tow truck arrived. Thereafter, Plaintiff was escorted to the Roseville police station, a short distance away.

In his amended complaint, Plaintiff alleges that while he was in the cruiser, he "repeatedly told Defendants Rule and Nichols that his handcuffs were too tight, were hurting his wrists, and were causing him injury." And that "despite these numerous and legitimately-voiced complaints, Defendants, and each of them, purposefully refused to relieve Plaintiff's needless suffering and intentionally left him in a condition where he continued to suffer ..." (Amended Complaint, ¶¶ 11 and 12). Plaintiff supports these allegations with his deposition testimony. As a result of

their failure to act, Plaintiff claims that he sustained a permanent injury to his wrist.[1]

Count I of Plaintiff's amended complaint, based on state tort law, alleges that Defendants Rule and Nichols were grossly negligent when they failed to heed his complaints about the handcuffs. Count II alleges that Defendants violated Plaintiff's Fourth Amendment right to be free from excessive force during an arrest, and seeks relief pursuant to 42 U.S.C. § 1983.

Defendants support their motion for summary judgment with the deposition testimony of Defendant Rule. She testified that she put handcuffs on Plaintiff and then, as is her custom, asked if they were too tight. She does not recall any complaints. In contrast, Plaintiff denies that Defendant Rule ever asked if the cuffs were too tight, and, as noted above, testified that he complained about them several times before they reached the Roseville Police Station. Furthermore, Defendant Rule testified that she had received some training in the proper method for application of handcuffs, and, as a result, knew that tight handcuffs could cause permanent injury to the wrists.

After the handcuffs were placed on Plaintiff's hands, he remained in the police cruiser for approximately 10 minutes before leaving the scene. During part of that time, Defendants Rule and Nichols were also in the cruiser. The trip to the Roseville police station took an additional 15 minutes.[2] All parties agree that Plaintiff was cooperative throughout the arrest process, and that Defendants Rule and Nichols were not otherwise physically or verbally abusive.

After completion of discovery, Defendants filed a motion for summary judgment on February 20, 1995, to which Plaintiff responded on March 13. After reviewing the papers filed by the parties and the arguments made by their counsel at a hearing held on May 25, 1995, the Court is now prepared to rule on Defendants' motion. This memorandum opinion and order sets forth that ruling.

## II. ANALYSIS

### A. THE STANDARDS GOVERNING CONSIDERATION OF A MOTION FOR SUMMARY JUDGMENT.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court decisions— *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[3] According to the *Celotex* Court:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

■ After reviewing the above trilogy, the Sixth Circuit established a series of prin-

---

**1.** At a medical examination conducted on behalf of the defense on September 27, 1995, Plaintiff reported continued occasional weakness and numbness in the thumb area of his right hand. The examining physician, however, found "no objective evidence of any abnormality in this man's right hand, right wrist or right forearm." (October 26, 1994 letter from Robert D. Larsen, M.D., to Margaret A. Nelson, p. 4).

**2.** These times are based on Plaintiff's testimony. Defendant Rule estimated that Plaintiff spent a total of approximately 10 to 15 minutes in the cruiser with the handcuffs on.

**3.** "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure*, § 2727, at 35 (Supp.1994).

ciples to be applied to motions for summary judgment:

[*] Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

[*] The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

[*] This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. * * *

[*] The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

[*] The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

[*] The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

See *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (footnotes with citations omitted). The Court will apply the above principles in deciding Defendants' motion for summary judgment.

## B. *DEFENDANTS' FAILURE TO LOOSEN PLAINTIFF'S HANDCUFFS WAS NOT AN EXCESSIVE USE OF FORCE.*

### 1. *Arguments of the Parties.*

Defendants, relying on *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir.1989), and *Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir.1993), argue that to rise to the level of force forbidden by the Fourth Amendment, handcuffing must be accompanied by abusive physical conduct causing injury sufficient to establish malicious, intentional conduct on the part of the officers. In *Hansen*, the court found a question of fact as to whether handcuffing involved an excessive use of force where the need to arrest was questionable and the handcuffs were placed on the arrestee in an abusive manner. And in *Palmer*, the officer "jerked Palmer [a 67 year old man who had been stopped on suspicion of drunk driving, had submitted to sobriety tests and passed] out of his car, pushed him against it, frisked him, handcuffed him, and pushed him into the back seat of the patrol car with such force that Palmer fell over sideways." *Id.* at 1434. According to Defendants, no objective facts establish any conduct on their part evidencing maliciousness or intent to harm.

Plaintiff disagrees with Defendants' description of the available evidence. According to him, Rule and Nichols blatantly ignored several complaints about the handcuffs. Furthermore, he argues that Rule's failure to respond to his complaints in light of her knowledge of the dangers of tight handcuffs is evidence that she intended to harm plaintiff, or, at the very least, was grossly negligent. The fact that Rule was outwardly polite, according to Plaintiff, makes no difference if her actions amounted to excessive force.

### 2. *Analysis.*

"Determining whether the force used to effect a particular seizure is reasonable [and therefore constitutional] under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (internal quotations omitted). The reasonableness of a particular use of force depends on the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether

he is actively resisting arrest or attempting to evade arrest by flight." *Id.,* 490 U.S. at 396, 109 S.Ct. at 1872.

 Contrary to Defendants' assertions, proof of outright maliciousness or intent to violate the constitution is not required to establish a Fourth Amendment violation. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham* at 397, 109 S.Ct. at 1872. However, if handcuffing is accompanied by physical or verbal abuse, or malicious and willful infliction of injury, that might be indicative that the Defendants' conduct was excessive. Consideration must be given to the totality of the circumstances, including the totality of the officer's conduct. Something more than negligence, or the mere failure to heed a prisoner's complaints, must be shown. If every case in which a person taken into custody with handcuffs were to give rise to a question of constitutional dimension requiring factual inquiry, literally every such case would require submission to the fact-finder.

 Here, the Court finds that Defendants' failure to remove the handcuffs under the circumstances presented in this case did not rise to the level of excessive force prohibited by the Fourth Amendment to the United States Constitution. In *Graham,* the Supreme Court cautioned against the use of hindsight, noting that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–397, 109 S.Ct. at 1872. Police officers often find themselves in situations in which the potential for a sudden explosive change in circumstances is unclear. For this reason, they are trained to take precautions that, in a particular situation, may seem unnecessary. Therefore, the use of force must be "judged from the perspective of a reasonable *officer* on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. at 1872 (emphasis added). " 'Not every push or

shove, even if it may later seem unnecessary in the peace of a judge's chambers,' *Johnson v. Glick,* 481 F.2d [1028], at 1033 [ (2nd Cir. 1973) ], violates the Fourth Amendment." *Id.* at 396, 109 S.Ct. at 1872.

Regardless of Defendants' intent, their alleged failure to heed Plaintiffs' complaints was objectively reasonable. Although Plaintiff was cooperative, he was also intoxicated. Furthermore, he remained in the cruiser for a short period of time, perhaps as few as 10 minutes, but certainly no more 25. Given the weather, road conditions, and other distractions (such as the tow truck) Defendants undoubtedly needed to concentrate on other matters.

In *Bur v. Gilbert,* 415 F.Supp. 335 (E.D.Wis.1976), the plaintiff was arrested pursuant to a warrant issued after he failed to appear in court for a traffic violation. He was handcuffed and sustained an injury to his wrist. Nevertheless, the court concluded:

> [T]he Court will assume, without finding, that the plaintiff was handled discourteously and that the use of handcuffs in this situation was unnecessary. The fact remains, however, that the use of such minimal force is not uncommon or unusual in the course of an arrest. For the Constitution to be violated, the force used must be excessive. While the law does not require that serious or permanent injuries result, the law does require that the force used be more than the mere technical "battery" that is inextricably a part of any arrest[.]

*Id.* at 341. *See also Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989) (en banc) ("significant injury" required for § 1983 excessive force claim).

## C. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

 Even if this Court were to find a question of fact as to whether Defendants used excessive force, Defendants would nevertheless be entitled to qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), ushered in a new era for the qualified immunity defense. That case dispensed with the previous rule that allowed a finding of liability "if an official *'knew or reasonably should have known*

that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury....'" *Id.*, 457 U.S. at 815, 102 S.Ct. at 2737 (quoting *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975)). *Harlow* found the second, subjective component of this analysis to be a hindrance, rather than an aid, to two of the central goals of qualified immunity—"to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Consistent with this conclusion, the Court held:

> [B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow* at 817–818, 102 S.Ct. at 2738. *See also Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

■ The inquiry should be directed to the state of the law at the time of the alleged offense. "[A]n official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow* at 818, 102 S.Ct. at 2738. Finally, the burden is on the plaintiff to allege and prove that Defendants violated a constitutional right clearly established at the time of his arrest. *Tucker v. Callahan,* 867 F.2d 909, 913 n. 3 (6th Cir.1989).

Although simple to state, application of this test in a particular situation is not always straight forward. Its operation "depends substantially upon the level of generality at which the relevant 'legal rule' is to be

identified." *Anderson, supra,* 483 U.S. at 639, 107 S.Ct. at 3038–3039.

For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow.* Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading.... It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant sense: *The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in light of pre-existing law the unlawfulness must be apparent.*

*Id.* at 639–640, 107 S.Ct. at 3039 (emphasis added).

■ Certainly, Plaintiff had a clearly established right to be free from the excessive use of force in his arrest. However, as *Anderson* indicates, this does not end the inquiry. Rather, this Court must ask whether Defendants had reason to know that, under the circumstances of this particular arrest, failure to heed Plaintiff's complaints could be considered an excessive use of force. In a case involving probable cause to seek a warrant, the Supreme Court stated: "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably compe-

tent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley, supra,* 475 U.S. at 341, 106 S.Ct. at 1096. Likewise, if reasonable officers could disagree on whether Defendants' failure to loosen the handcuffs was excessive force, Defendants are entitled to qualified immunity. "[T]he *Harlow* standard ... gives ample room for mistaken judgments". *Malley* at 343, 106 S.Ct. at 1093. "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (quoting *Davis v. Scherer,* 468 U.S. 183, 196, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984)).

In addition to determining the contours of the right at issue, application of the qualified immunity doctrine in the context of a Fourth Amendment excessive force claim presents another difficulty. At least one court has concluded that "in excessive force cases the substantive inquiry that decides whether the force exerted by police was so excessive that it violated the Fourth Amendment is the same inquiry that decides whether the qualified immunity defense is available to the government actor." *Quezada v. County of Bernalillo,* 944 F.2d 710, 718 (10th Cir.1991). *See also Dixon v. Richer,* 922 F.2d 1456, 1463 (10th Cir.1991) ("in excessive force claims asserted under the Fourth Amendment, the qualified immunity question is usually answered in the Fourth Amendment inquiry").

■ While it is true that both inquiries involve questions of objective reasonableness, this Court does not believe that the inquiries are identical. In the Fourth Amendment context, as discussed *supra,* courts inquire as to whether the officer's actions and the force used was objectively reasonable given the circumstances surrounding the arrest. In the qualified immunity context, the inquiry is whether, even assuming the officer might be considered to have used excessive force, the officer could have reasonably believed, in light of existing law and the circumstances surrounding the arrest, that his actions were legal.

Thus, although *Quezada* appears to hold that the Fourth Amendment excessive force inquiry is virtually identical to the qualified immunity inquiry, this analysis seems to this Court to be incomplete. Although there is clearly some overlap between the two inquiries—particularly in the area of the nature and extent of the force itself that was used—there is a separate inquiry necessitated in a qualified immunity analysis. That inquiry focuses on what a reasonable officer could have reasonably been expected to know concerning the extent of the right to be free from the use of excessive force.

■ Therefore, in determining whether qualified immunity will be accorded, we do not expect officers to be constitutional scholars, able to make fine, academic distinctions about how the law may apply to the circumstances they are confronting while they are in the heat of an arrest. Rather, we look to what a reasonable officer can be expected to know and understand about the contours and extent of Fourth Amendment excessive force law. Clearly, this is an objective standard—an officer's alleged subjective good faith will not shield him from liability if an objectively reasonable officer should have known that his actions violated the law under the circumstances. But, if the contours of the law are not well defined under the circumstances—if an objectively reasonable officer can not be expected to know that the force he is using will constitute a violation of the Fourth Amendment—liability will not attach.

■ Here, an analysis of the law and the circumstances clearly operate in favor of qualified immunity. Under existing law, excessive force does not generally manifest itself in the form on a nonfeasance or negligence. In the normal course, some more egregious conduct is required to find a constitutional violation. Failure to remedy a harm, even if negligently inflicted by the officer, is less likely to be considered excessive force than a direct act of injury. Given these circumstances, it is certainly not clear that a reasonable officer would, at the time, understand and comprehend that a failure to respond to a complaint about tight handcuffs

and to loosen them could result in an excessive force violation.

Thus, even if a particular jury might be able to conclude, with a proper jury instruction, that there was excessive force, Defendants are entitled to qualified immunity because they could not be expected to anticipate that the law would extend that far. The defense "gives ample room for mistaken judgments". *Malley, supra,* at 343, 106 S.Ct. at 1097. "[I]f officers of reasonable competence could disagree ... immunity should be recognized." *Id.* at 341, 106 S.Ct. at 1096. In similar situations, other courts have agreed. *See Hannula v. City of Lakewood,* 907 F.2d 129, 132 (10th Cir.1990) (failure to loosen tight handcuffs not a clearly established constitutional violation under pre-*Graham* law); *Greiner v. City of Champlin,* 816 F.Supp. 528, 542 (D.Minn.1993) (officers entitled to qualified immunity because force was not excessive); *Alm v. Moreth,* 694 F.Supp. 1322 (N.D.Ill.1988) (officer who used handcuffs during arrest of motorist in spite of motorist's protestation that recent wrist surgery had not completely healed, immune from § 1983 liability).[4]

### D. *STATE LAW CLAIM.*

■■■ Defendants also seek dismissal of Plaintiff's state law claim (count I of his amended complaint). However, given that this Court finds Plaintiff's federal claim to be without merit, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim, and will remand it to state court. *See* 28 U.S.C. § 1367(c)(3).

### III. *CONCLUSION*

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART. Plaintiff's federal claim (count II) is hereby dismissed with prejudice. Plaintiff's state tort claim (count I) is hereby remanded to the Macomb County Circuit Court.

---

4. The Sixth Circuit Court of Appeals concluded in *Walton v. City of Southfield,* 995 F.2d 1331 (6th Cir.1993), that an officer who, while arresting a motorist for driving without a valid license, handcuffed her behind the back in spite of her alleged request that he not do so because of a sore shoulder for which she was being treated, was not entitled to qualified immunity. *Walton,* however, does not control the case before this Court because of significant differences in the facts. In *Walton,* the arrestee was not intoxicated and suffered from a physical ailment that made handcuffing especially painful. More importantly, she advised the officers of this condition before they handcuffed her. As a result, the officers had reason to know that handcuffing her behind her back could exacerbate a pre-existing condition. Thus, the use of handcuffs in the first instance given a pre-existing condition of which the officers allegedly had knowledge, was at issue in *Walton,* not simply a failure to remove handcuffs after they had been legitimately applied.