FILED
United States Court of Appeals
Tenth Circuit

**August 5, 2008**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOHN VONDRAK,

     Plaintiff-Appellee/Cross-
Appellant,

v.

CITY OF LAS CRUCES; CINDY
McCANTS and NATHAN KRAUSE,
individuals and employees of the Las
Cruces Police Department,

     Defendants-Appellants/Cross-
Appellees.

Nos. 07-2148 and 07-2159

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-05-172-JB/LFG)**

---

David P. Lutz (William L. Lutz with him on the briefs), Martin, Lutz, Roggow,
Hosford & Eubanks, P.C., Las Cruces, NM, for Appellants/Cross-Appellees.

Barry J. Byrnes, Las Cruces, NM, for Appellee/Cross-Appellant.

---

Before **TACHA, BRISCOE,** and **HARTZ**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

     This is an action brought by plaintiff John Vondrak under 42 U.S.C. § 1983

against Officer Cindy McCants, Officer Nathan Krause, and the City of Las Cruces, New Mexico (collectively, "Defendants"). Vondrak has alleged claims against McCants and Krause for illegal arrest, excessive force, and inadequate medical attention, and Vondrak has included similar claims against the City for its failure to train its police officers adequately. The district court granted summary judgment to all Defendants on the inadequate medical attention claim, and to Krause on the illegal arrest claim. The district court denied summary judgment to Defendants on Vondrak's other claims, holding that McCants was not entitled to qualified immunity on either the illegal arrest or the excessive force claim, and Krause was not entitled to qualified immunity on the excessive force claim. All Defendants appeal, and Vondrak has filed a cross-appeal. We have jurisdiction over McCants' appeal and Krause's appeal pursuant to 28 U.S.C. § 1291, and we reverse the denial of qualified immunity on the illegal arrest claim and affirm the denial of qualified immunity on the excessive force claim. We dismiss the City's appeal and Vondrak's cross-appeal for lack of appellate jurisdiction.

I.

On August 18, 2003, the Las Cruces Police Department established a sobriety checkpoint at the corner of Valley Drive and Hayner Avenue in Las Cruces, New Mexico. At approximately 10:10 p.m., John Vondrak approached the checkpoint in his 1994 Mercury Cougar, and an unidentified police officer asked Vondrak if he had consumed any alcohol that evening. Vondrak responded

2

that he bought a beer about three or four hours earlier, and consumed approximately one-third of it. The officer directed Vondrak to pull his car over to the side of the road.

Officer McCants approached Vondrak's car and asked, "You've admitted to drinking today?" Transcript, Def. ROA, at 56.[1]

Vondrak responded, "I had one beer three hours ago." Id.

McCants explained to Vondrak that she was going to conduct field sobriety tests:

| | |
|---|---|
| Officer McCants: | Since you have admitted to drinking, we're going to give you a field sobriety test, okay? |
| | (Indiscernible radio traffic.) |
| Dr. Vondrak: | I can handle that. |
| Officer McCants: | Do you want to take the test? |
| Dr. Vondrak: | Absolutely. |
| Officer McCants: | Okay. Let's go over here where it's flat. Go ahead and stand right here facing me. Do you have any physical ailments that cause you any problems in walking, standing? |
| Dr. Vondrak: | I have no problems. |
| Officer McCants: | You're in fairly good health? |

---

[1] The transcript of their conversation has been prepared from a tape in Officer McCants' belt recorder, which she activated shortly after her encounter with Vondrak began. It is unclear what, if anything, transpired between Vondrak and McCants before she turned on her belt recorder.

Dr. Vondrak:  I'm in excellent health.

Id. at 56-57.[2]

McCants first described the "one-legged stand test" to Vondrak, which required him to lift one of his legs six inches above the ground, point his toe, and count to thirty.  Vondrak responded that he "probably couldn't even do that if [he'd] never had a drink."  Transcript, Def. ROA, at 57.  McCants believed that Vondrak's statement was a preemptive attempt to justify failing the test.  During the test, Vondrak swayed and put his foot down several times.  McCants concluded that Vondrak had failed the test.

---

[2] As the district court noted, the police report states that Officer McCants "could smell a strong [*sic*] of an alcoholic beverage."  Police Report, Def. ROA, at 53.  The district court declined to consider this statement because it "was not included in the parties' briefing, in either parties' statement of facts, or at oral argument."  Dist. Ct. Op. at 3 n.2.  Because the district court did not consider this fact, we may not now consider it:

> Individual defendants . . . may interlocutorily appeal the denial of qualified immunity.  However, [Johnson v. Jones, 515 U.S. 304, 312-13 (1995),] provides that the scope of such appeals is limited to "purely legal" challenges to the district court's ruling on whether a plaintiff's legal rights were clearly established, and cannot include attacks on the court's "evidence sufficiency" determinations about whether there are genuine disputes of fact.  That is, we can only review whether the district court "mistakenly identified clearly established law . . . given [ ] the facts that the district court assumed when it denied summary judgment for that (purely legal) reason."  Id. at 319.

Sevier v. City of Lawrence, 60 F.3d 695, 700 (10th Cir. 1995) (some citations omitted).  For similar reasons, we will also refrain from considering the deposition testimony of Sergeant Kerry Clements that Defendants reference in their brief.

4

McCants next described the "walk and turn test" to Vondrak, which required him to walk nine steps, heel to toe, down an imaginary line, and then turn around and walk nine steps back. Vondrak had trouble with the test, and McCants concluded that he had failed it. Vondrak claims that he did not understand McCants' instructions.

Finally, McCants administered the "horizontal gaze nystagmus test," which required Vondrak to follow a pen with his eyes without moving his head. McCants concluded that Vondrak had failed this test as well.

Because Vondrak had admitted consuming alcohol and had failed the field sobriety tests, McCants believed that Vondrak had committed the crime of Driving While Under the Influence. McCants placed him under arrest and handcuffed him. Pursuant to police department policy, McCants double-locked the handcuffs.

Officer Nathan Krause observed McCants administer the field sobriety tests. After McCants placed Vondrak in handcuffs, Krause performed a pat-down search of Vondrak and inventoried Vondrak's car. Vondrak requested that the officers take him to a hospital immediately, so that he could "take . . . an alcohol test." Transcript, Def. ROA, at 62.

According to McCants, Vondrak did not complain about the handcuffs when she first placed them on him. McCants also claims that "[n]othing that occurred over the course of the evening would have led me to believe that Dr.

5

Vondrak would suffer injury from the handcuffs." McCants Aff., Def. ROA, at 51, ¶ 11. Likewise, Krause claims that Vondrak never complained about the handcuffs during the pat-down search or while Krause was on the scene. Vondrak claims, in contrast, that he told the officers "[a] half dozen times" that the handcuffs were too tight and that his wrists were hurting and going numb. Vondrak Dep., Pl. ROA, at 57. He claims that, although he did not "cry out," he told McCants "that [his] wrists hurt immediately when she put [the handcuffs] on . . . , when she clamped down hard on both of them." Id. at 58-59.[3] He also claims that he told McCants in the patrol car on the way to the police station that "the handcuffs were too tight, and that they . . . felt like . . . they were bleeding, that they were too tight, cutting into my wrists." Id. at 58.

McCants drove Vondrak to the police station. After they arrived, McCants administered two IR-5000 tests on Vondrak, both of which produced a blood-alcohol content reading of 0.00. She then asked another officer to perform an RBT test, which produced a blood-alcohol content reading of 0.00. After the officers tested Vondrak, they held him for another one-and-a-half hours. During this time, Vondrak made several requests for someone to loosen his handcuffs because his wrists were hurting; all requests were ignored. At some point, a police department employee photographed Vondrak's wrists. In the photographs,

---

[3] The transcript covers this time period, but it does not clarify whether Vondrak complained about the handcuffs.

Vondrak's wrists appear red, but they do not appear cut or scraped. Eventually, the officers charged Vondrak with Driving While Under the Influence to the Slightest Degree, and they released him on his own recognizance. The charge against Vondrak was later dropped.

Following his release, Vondrak went to the emergency room at Mountain View Regional Medical Center. According to a toxicology screening report, Vondrak tested negative for drugs or alcohol. Dr. Scot Martin, who treated Vondrak, observed "multiple superficial abrasions and ecchymosis" on both wrists. Martin Diagnosis, Def. ROA, at 143. He diagnosed Vondrak with neurapraxia in both wrists, and a soft tissue sprain of the right wrist.

The pain and discomfort in Vondrak's wrists did not subside, and it interfered with his ability to practice as an orthodontist and play golf. Dr. Pawan Jain, a neurologist, diagnosed Vondrak with a permanent radial nerve injury in his wrists, and Dr. Jain concluded that the "handcuffing was the competent producing cause of his right radial and bilateral median nerve injuries." Jain Diagnosis, Def. ROA, at 146. Dr. Wayne Lindsey, an orthopedist, concluded that Vondrak had "[s]uperficial radial nerve palsy" in his right wrist, and "[b]ilateral mild carpal tunnel syndrome." Lindsey Diagnosis, Def. ROA, at 160. Dr. Lindsey stated that Vondrak had "reached maximum medical improvement" and had "sustained permanent impairment" with regard to these injuries. Id. He concluded that the injuries "seem to be the direct result of constriction of the superficial radial nerve

7

and median nerve of the wrists secondary to prolonged constriction by handcuffs placed during [the arrest]." Id.

In his complaint filed in this action, Vondrak alleged that McCants and Krause were liable under 42 U.S.C. § 1983 for illegal arrest, excessive force, and inadequate medical attention. He alleged that the City was liable under § 1983 because of its failure to train its police officers adequately. Vondrak also alleged claims under New Mexico law for intentional tort and negligence, which are not at issue on appeal.

Defendants filed a motion for summary judgment. They argued, *inter alia*, that (1) qualified immunity protected McCants and Krause on all of Vondrak's federal claims; (2) alternatively, Krause was not liable because he neither arrested Vondrak nor applied the handcuffs; and (3) because McCants and Krause were entitled to qualified immunity, the City could not be liable.

The district court granted in part and denied in part Defendants' motion for summary judgment. The district court first explained that, "because the initial stop at the checkpoint was legal and because the failure of three field-sobriety tests would give an arresting officer probable cause to arrest an individual for DUI, whether Vondrak's arrest was illegal hinges on whether McCants possessed reasonable suspicion to administer field-sobriety tests to Vondrak." Dist. Ct. Op. at 23. The district court then held that Vondrak's statement—"I had one beer three hours ago"—was not, by itself, "enough to provide McCants, as a matter of

8

law, with an objectively reasonable and articulable suspicion that Vondrak had driven or was driving under the influence of alcohol." Id. at 25. The district court also held that the question of whether McCants had "arguable reasonable suspicion"—such that she would be entitled to qualified immunity—was "factual," thus precluding summary judgment in her favor. Id. at 26.

Next, the district court held that, assuming Vondrak supplied adequately authenticated medical records, "Vondrak ha[d] established that his constitutional right to be free from excessive force was violated—he was handcuffed in a manner that caused an actual, non-deminimis [*sic*] injury—and that the right to be free from excessive force under objective reasonableness standards was clearly established at the time of the alleged incident . . . ." Id. at 29. McCants, therefore, was "not entitled to qualified immunity on Vondrak's excessive use of force claim." Id. On the other hand, McCants was entitled to qualified immunity on Vondrak's inadequate medical attention claim, because Vondrak had failed to present facts demonstrating that McCants was deliberately indifferent to his medical needs.

The district court granted Krause summary judgment on both the illegal arrest and inadequate medical attention claims. The court reasoned that, on the illegal arrest claim, "Krause did not begin to observe the McCants/Vondrak encounter until after McCants had determined that she had reasonable suspicion to conduct field-sobriety tests," so Krause lacked "the capability to intercede to

9

prevent the harm that Vondrak may have suffered as a result of McCants'

actions." Id. at 32. Vondrak's inadequate medical attention claim against Krause

failed for the same reasons as his claim against McCants. The district court

denied Krause summary judgment on the excessive force claim, however, holding

that a reasonable jury could conclude that Krause could have effectively

intervened to prevent the use of excessive force on Vondrak.

Finally, the district court held that the City was entitled to summary

judgment on the inadequate medical attention claim because Vondrak had not

established that anyone violated his right to adequate medical attention. The

district court denied the City's motion on the illegal arrest and excessive force

claims, though, because Vondrak had introduced evidence showing constitutional

violations on these claims, and the City had not contested "any of the other

elements necessary to hold a municipality liable." Id. at 33.

Defendants argue that the district court erred in (1) denying qualified

immunity to McCants on Vondrak's illegal arrest claim, and (2) denying qualified

immunity to McCants and Krause on Vondrak's excessive force claim.[4] Vondrak

has filed a cross-appeal, contending that the district court erred in (1) dismissing

---

[4] The City is listed as an appellant, but Defendants spend only one sentence in their brief on appeal, in a footnote, discussing the City's liability. This is insufficient to invoke appellate review. See Femedeer v. Haun, 227 F.3d 1244, 1255 (10th Cir. 2000) ("On appeal, however, parties must do more than offer vague and unexplained complaints of error. Perfunctory complaints that fail to frame and develop an issue are not sufficient to invoke appellate review." (citations, alterations, and internal quotation marks omitted)).

10

his illegal arrest claim against Krause, (2) dismissing his inadequate medical attention claim against all Defendants, and (3) concluding that the sobriety checkpoint satisfied the Fourth Amendment.

II.

Recently, we explained our standard of review for an appeal from a denial of qualified immunity:

> "Because of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions." Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must first establish that the defendant violated a constitutional right. Reynolds v. Powell, 370 F.3d 1028, 1030 (10th Cir. 2004). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001). If, on the other hand, a violation has been shown, the plaintiff must then show that the constitutional right was clearly established. See id. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation . . . ." Id. at 202. Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful. Id. (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).
>
> We have held that, for a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). The Supreme Court has explained that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope

11

v. Pelzer, 536 U.S. 730, 741 (2002).

> The district court's denial of qualified immunity is a question of law which we review de novo. Bisbee v. Bey, 39 F.3d 1096, 1099 (10th Cir. 1994). We review the evidence in the light most favorable to the nonmoving party. Id. at 1100. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007).

Cortez v. McCauley, 478 F.3d 1108, 1114-15 (10th Cir. 2007) (en banc). Before we reach the merits of the individual claims, however, we must first determine the extent of our appellate jurisdiction.

*Appellate jurisdiction*

Under 28 U.S.C. § 1291, we have jurisdiction over "appeals from all final decisions of the district courts of the United States." As this statutory limitation indicates, "interlocutory appeals are the exception and not the rule." Myers v. Okla. County Bd. of County Comm'rs, 80 F.3d 421, 424 (10th Cir. 1996). "One well recognized exception allows public officials asserting a defense of qualified immunity to appeal a district court's denial of summary judgment on that defense if the issue on appeal is whether the constitutional right that was allegedly violated was 'clearly established.'" Id. (citing Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)); see also Cortez, 478 F.3d at 1112. Under this exception, we have appellate jurisdiction over McCants' appeal and Krause's appeal from the district court's denial of summary judgment on qualified immunity grounds.

12

Our appellate jurisdiction does not extend to Vondrak's cross-appeal. "[T]his court has discretion to exercise pendent appellate jurisdiction over nonappealable issues once we have asserted jurisdiction over other appealable issues in the same case." Roska ex rel. Roska v. Sneddon, 437 F.3d 964, 970 (10th Cir. 2006). Our exercise of pendent appellate jurisdiction, though, "is generally disfavored," and is only appropriate "where the otherwise nonappealable decision is inextricably intertwined with the appealable decision, or where review of the nonappealable decision is necessary to ensure meaningful review of the appealable one." Id. (citations and internal quotation marks omitted). "[A] pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well." Moore v. City of Wynnewood, 57 F.3d 924, 930 (10th Cir. 1995).

Resolution of the properly appealable issues will not necessarily resolve the issues in Vondrak's cross-appeal. Krause was not present when McCants decided to subject Vondrak to the field sobriety tests, and, as a result, Vondrak's illegal arrest claim against Krause is not "inextricably intertwined" with Vondrak's claim against McCants. See Foote v. Spiegel, 118 F.3d 1416, 1423-24 (10th Cir. 1997). Similarly, our resolution of the excessive force claim will not necessarily

13

resolve the inadequate medical attention claim.  We analyze claims for excessive force under an objective reasonableness standard, without regard to the officer's state of mind, see Tanberg v. Sholtis, 401 F.3d 1151, 1168 (10th Cir. 2005), whereas claims for inadequate medical attention have both an objective and a subjective component, see Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005).  Vondrak's cross-appeal is not sufficiently related to the claims properly before us, and we decline to exercise pendent appellate jurisdiction over it.

*Reasonable suspicion and the field sobriety tests*

The district court erred in denying qualified immunity to McCants on Vondrak's illegal arrest claim.  On appeal, the sole issue regarding the illegal arrest claim is whether McCants had reasonable suspicion—or, for qualified immunity purposes, "arguable reasonable suspicion"—to subject Vondrak to the field sobriety tests.

In Michigan Department of State Police v. Sitz, 496 U.S. 444, 450-55 (1990), the Supreme Court upheld certain types of sobriety checkpoints as consistent with the Fourth Amendment.  Thus, "[e]ven in the absence of individualized suspicion, a brief seizure at a checkpoint may be reasonable if conducted in a neutral manner for the purpose of effectuating important governmental purposes."  United States v. Galindo-Gonzales, 142 F.3d 1217, 1221 (10th Cir. 1998).  The situation changes, though, when a police officer subjects a driver to field sobriety tests, and in such instances, the officer must

14

have reasonable suspicion. Wilder v. Turner, 490 F.3d 810, 815 (10th Cir. 2007) ("A field sobriety test is a minor intrusion on a driver only requiring a reasonable suspicion of intoxication and an easy opportunity to end a detention before it matures into an arrest." (citations and internal quotation marks omitted)); see also Sitz, 496 U.S. at 450-51; Rogala v. Dist. of Columbia, 161 F.3d 44, 52 (D.C. Cir. 1998). As we explained in Galindo-Gonzales:

> Requiring an individualized, reasonable suspicion as a prerequisite to expanding the scope of detentions at fixed checkpoints protects motorists and passengers from random stops involving the kind of standardless and unconstrained discretion that is the evil the Court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed, at least to some extent.

Galindo-Gonzales, 142 F.3d at 1221 (citation, alteration, and internal quotation marks omitted).

Under the reasonable suspicion standard, a police officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). A reasonable suspicion analysis is based upon the "totality of the circumstances," and "officers [may] draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citations and internal quotation marks omitted). "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the

15

likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." Id. at 274 (citations and internal quotation marks omitted). In the context of a § 1983 action, moreover, the officer "is entitled to qualified immunity if a reasonable officer could have believed that [reasonable suspicion] existed to . . . detain the plaintiff"—i.e., if the officer had "arguable reasonable suspicion." Cortez, 478 F.3d at 1120, 1123.

Vondrak's statement that he "had one beer three hours ago" provided McCants with reasonable suspicion to conduct the field sobriety tests, or at the very least provided her with "arguable reasonable suspicion" entitling her to qualified immunity. See United States v. Slater, 411 F.3d 1003, 1004, 1006 (8th Cir. 2005) ("Jones's admission that he had been drinking ["a couple drinks"] earlier that evening gave Officer Perry reasonable suspicion to extend the stop while Jones completed the sobriety tests."); see also Miller v. Harget, 458 F.3d 1251, 1259 (11th Cir. 2006) ("[W]hen Officer Harget smelled alcohol coming from the vehicle Mr. Miller had been driving, he had reasonable suspicion to detain Mr. Miller in order to investigate."); United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999) ("The detection of alcohol on Neumann's breath provided Kayras with a reasonable suspicion to further detain Neumann and expand the scope of the investigation."); United States v. Caine, 517 F. Supp. 2d 586, 589 (D. Mass. 2007) (finding reasonable suspicion where the defendant's

eyes were glassy and bloodshot, and she had admitted drinking earlier that night); Griffin v. City of Clanton, 932 F. Supp. 1359, 1366 (M.D. Ala. 1996) (finding reasonable suspicion where "Officer Bearden smelled alcohol on Griffin's breath" and "Griffin admitted that he had consumed a few drinks"). Admittedly, this is a close case. McCants' only factual basis for conducting the field sobriety tests was Vondrak's admission to drinking one beer several hours earlier, and the specificity of Vondrak's statement makes it less suspicious than in many of the cases cited above. Nevertheless, given that Vondrak admitted consuming alcohol, McCants had the reasonable suspicion necessary to perform the field sobriety tests—or, at the very least, the arguable reasonable suspicion entitling her to qualified immunity.

Our reasonable suspicion analysis is buttressed by New Mexico law, which proscribes driving while impaired to the slightest degree. See N.M. Stat. Ann. § 66-8-102(A) ("It is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state."); see also State v. Neal, 176 P.3d 330, 336-38 (N.M. Ct. App. 2007). The New Mexico Supreme Court has explained:

> It was the intention of the legislature . . . to prohibit any person under the influence of intoxicating liquor, however slight, from operating an automobile on any highway in New Mexico. A person who has taken a drink of intoxicating liquor is not necessarily under its influence; but if it affects him so that, to the slightest degree, he is less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and

17

> dangerous a mechanism as a modern automobile with safety to himself and the public, he is under the "influence of intoxicating liquor" within the meaning of the statute.

State v. Sisneros, 82 P.2d 274, 278 (N.M. 1938) (citation and some internal quotation marks omitted);[5] see also Neal, 176 P.3d at 338 ("The statute gives notice, according to the plain meaning of the word 'influence,' that the Legislature intends to criminalize a condition less than intoxication, but 'influenced' to any degree by alcohol, no matter how slight."). The sheer breadth of § 66-8-102(A)—as compared to, for instance, the statute proscribing a person from driving with a blood-alcohol content of greater than 0.08, see § 66-8-102(C)—provides support for McCants' argument that she had reasonable suspicion that Vondrak violated New Mexico law. Cf. Blackstone v. Quirino, 309 F. Supp. 2d 117, 126 (D. Me. 2004) (concluding that the officers had reasonable suspicion, and relying in part on the breadth of a similar statute under Maine law). McCants was entitled to qualified immunity on the illegal arrest claim, and the district court erred in concluding otherwise.

*The handcuffs and excessive force*

The district court was correct in denying qualified immunity to McCants and Krause on Vondrak's claim for excessive force. "[T]he right to make an

---

[5] In Sisneros, the court was construing § 66-8-102(A)'s predecessor. The statute provided: "It shall be unlawful . . . for . . . any person who is under the influence of intoxicating liquor or narcotic drugs to drive any vehicle upon a highway within this state." State v. Sisneros, 82 P.2d 274, 276 (N.M. 1938) (quoting N.M. Stat. § 11-802 (1929)).

18

arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Graham v. Connor, 490 U.S. 386, 396 (1989) (citations and some internal quotation marks omitted).  Each case "requires careful attention to the facts and circumstances . . . , including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. (citation and internal quotation marks omitted).

We have consistently rejected a bright-line rule requiring plaintiffs to demonstrate physical injury when bringing excessive force claims.  See Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1195 (10th Cir. 2001) (explaining that "[p]hysical injury may be the most obvious injury that flows from the use of excessive force," but "declin[ing] to adopt a 'bright-line' standard dictating that force cannot be 'excessive' unless it leaves visible cuts, bruises, abrasions or scars").  Nevertheless, when an excessive force claim relies upon unduly tight handcuffing, we have held that the plaintiff must show "some actual injury":

19

> In some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight. . . . We believe that a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional.

Cortez, 478 F.3d at 1129.

The district court correctly concluded that McCants and Krause were not entitled to qualified immunity on Vondrak's excessive force claim for unduly tight handcuffing. Although the officers claim to have been unaware that Vondrak's handcuffs were tight, Vondrak has presented evidence that the officers "ignored [his] timely complaints (or [were] otherwise made aware) that the handcuffs were too tight." Cortez, 478 F.3d at 1129. For instance, Vondrak asserts that he told the officers "[a] half dozen times" that the handcuffs were too tight, and that his wrists were hurting and going numb. Vondrak Dep., Pl. ROA, at 57. He also claims that he told McCants "that [his] wrists hurt immediately when she put [the handcuffs] on . . . , when she clamped down hard on both of them." Id. at 57-59. He claims that he told McCants on the way to the police station that "the handcuffs were too tight, and that they . . . felt like . . . they were bleeding, that they were too tight, cutting into my wrists." Id. at 58. Finally, Vondrak asserts that he made several requests at the police station for someone to loosen his handcuffs because his wrists were hurting, but the officers ignored him.

20

Vondrak has also presented evidence that he suffered a permanent, "actual injury" as a result of the handcuffing. Cortez, 478 F.3d at 1129. Vondrak has stated that the pain in his wrists has not subsided since the arrest. His neurologist, Dr. Jain, has diagnosed him with permanent nerve injury in his wrists, and has concluded that the "handcuffing was the competent producing cause of his right radial and bilateral median nerve injuries." Jain Diagnosis, Def. ROA, at 146-47. Likewise, Vondrak's orthopedist, Dr. Lindsey, has concluded that Vondrak now suffers from "[s]uperficial radial nerve palsy" in his right wrist, and "[b]ilateral mild carpal tunnel syndrome." Lindsey Diagnosis, Def. ROA, at 160. According to Dr. Lindsey, these injuries are permanent, and they are "the direct result of constriction of the superficial radial nerve and median nerve of the wrists secondary to prolonged constriction by handcuffs placed during [the arrest]." Id.

Further, at the time of Vondrak's arrest, the right to be free from unduly tight handcuffing was "clearly established"—as were the contours of the right. See Cortez, 478 F.3d at 1129 (citing cases and implying that this framework was "clearly established" for claims in which plaintiffs allege that "unduly tight handcuffing . . . constitute[s] excessive force"); see also Lyons v. City of Xenia, 417 F.3d 565, 575 (6th Cir. 2005); Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003); Herzog v. Village of Winnetka, 309 F.3d 1041, 1043-44 (7th Cir. 2002); Bastien v. Goddard, 279 F.3d 10, 14 (1st Cir. 2002); Palmer v.

21

Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993); cf. Hannula v. City of Lakewood, 907 F.2d 129, 132 (10th Cir. 1990) (analyzing the excessive force claim under the due process clause and concluding that "[t]he cases do not 'clearly establish' that handcuffing a detainee too tightly constitutes excessive force, at least in the absence of apparent physical damage to the plaintiff's wrists"), abrogated in part by Graham, 490 U.S. at 394-95.[6]

Lastly, given Krause's close proximity to the initial handcuffing, and his presence immediately thereafter, the district court was correct in denying qualified immunity to Krause on the excessive force claim. It is "clearly established"

> that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official. In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. Whether an officer had sufficient time to intercede or was capable of preventing the

_____

[6] Although Lyons and Cortez were decided after Vondrak's arrest, both cases suggest—either explicitly or implicitly—that the standard for unduly tight handcuffing was already "clearly established." See Lyons, 417 F.3d at 575; cf. Cortez, 478 F.3d at 1129.

In addition, although McCants and Krause rely heavily on the Eastern District of Michigan's analysis in Nemeckay v. Rule, 894 F. Supp. 310, 314-18 (E.D. Mich. 1995), Nemeckay no longer appears to state the "clearly established" law with regard to unduly tight handcuffing claims in the Sixth Circuit. See Lyons, 417 F.3d at 575.

22

harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.

Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted); see also Mick v. Brewer, 76 F.3d 1127, 1136 (10th Cir. 1996). Neither McCants nor Krause was entitled to qualified immunity on Vondrak's excessive force claim.

III.

We REVERSE the district court's denial of qualified immunity on Vondrak's illegal arrest claim against McCants, and AFFIRM the denial of qualified immunity on Vondrak's excessive force claim against McCants and Krause. We DISMISS the City's appeal and Vondrak's cross-appeal for lack of appellate jurisdiction. The case is REMANDED to the district court for further proceedings consistent with this opinion.

07-2148 - *Vondrak v. City of Las Cruces, et al.*

**HARTZ**, Circuit Judge, concurring in part, dissenting in part:

I join all of the majority opinion except that I would affirm the denial of qualified immunity on the illegal-arrest claim against McCants. As the majority opinion states, Vondrak told McCants that he had "bought a beer about three or four hours earlier, and consumed approximately one-third of it." Op. at 2. I do not think that Vondrak's statement in itself (and there is nothing else to support McCants) gave McCants reasonable suspicion, or even arguable reasonable suspicion, to believe that Vondrak was violating the law. Perhaps McCants, through training or experience, had come to learn (1) that a driver could be impaired by the drinking described by Vondrak or, more likely, (2) that someone who admitted to the drinking described by Vondrak (yet, like him, displayed no sign of intoxication, such as alcohol on the breath or erratic driving) had likely imbibed more than described and was impaired in driving. But there was no such evidence in this case.